By the Court, Mullin, J.
notwithstanding the great number of causes which have been before the court in which the plaintiffs charged railroad companies, and other carriers with negligence, whereby damages were sustained by such plaintiffs, but little progress has been made in settling principles of law, or rules of evidence, applicable to such cases. The reason probably is, that the carrying interest of the country has become so important, and the amount for which any single accident may render them liable is generally so large, that policy as well as economy demand that every principle affecting their rights should not be deemed to be settled until after the most thorough investigation and discussion.
In the case before us, I think it will be found that nearly all the questions argued by the defendant’s counsel have been repeatedly before the courts, and must, as to this court, be taken as res judicata. I do not mean to cast any reflections on the conduct of the defendant’s counsel for again discussing these questions. It is his right to argue them, and it is our duty, as it is our pleasure, to “hear him. I will not attempt to examine all the questions presented by his points, as the examination of a few of the most important ones will enable us to establish principles which will dispose of the rest.
The first exception relied upon by the counsel is, to the permission by the court to the plaintiff to answer the following question: “Did the state of your health *294 cause you to give up your business?’ The plaintiff’s damages must be measured, in part at least, by the injury to his health by reason of the negligence imputed to the defendant. The extent, nature and permanency of this injury it was competent for the plaintiff to prove ; and any question, fairly calling for facts bearing on this point, was unquestionably competent. If the injury was serious, and yet not such as to deprive him of the ability to .labor, he was entitled to a less measure of damages than he would be if he was deprived of such ability. The question called for this fact, and it was clearly competent. The question called for a fact—not opinion. It is true that when a man has fully stated his physical and mental condition, a jury may be able to say whether he is able to perform labor. If his arms are broken, it would ordinarily follow that he could not perform manual labor, and in such case it would be wholly unnecessary to inquire whether the state of his. health caused him to give up labor. But very serious injury may be inflicted on a person and yet his capacity for labor remain ; at least, it may not be possible for a jury, from a description of his injuries, to say whether he could or could not thereafter perform labor. The injuries sustained by the plaintiff were of this description. He alone could say whether he was, in truth, wholly or partially deprived of the ability to work.
It appeared on the trial that after the injury the plaintiff continued in the employ of the Messrs. Remington, and that they had increased his wages, at his request, ten dollars per month. This fact did not indicate a decreased capacity for labor, but on the contrary, it was almost conclusive, not only of his capacity, but that the plaintiff relied upon it as a ground on which to demand such increase. It is true the constantly increasing cost of living may be a sufficient basis for higher wages, and it was for the plaintiff to satisfy the jury, if he could, that such increase was the result of causes other than a *295 continued inability to labor. It was not important whether this evidence .was given before he rested, or in reply, after the defendants should have given their evidence. I entertain no doubt of its competency.
The plaintiff’s claim for damages rested, in part, upon the theory that the injury had caused partial paralysis of certain functions of the body, and that such paralysis would not only be permanent, but might terminate in the destruction of the whole nervous system. Whether paralysis had already begun, was a question, not of skill merely, but of fact—fact known to the plaintiff only, unless the disease had extended far enough to affect his limbs, speech or intellect. Whether the nerves connected with the sexual organs were paralyzed, was a question of skill applied to the fact that they were affected, which could be known to the plaintiff only. He alone could say whether the desire for sexual intercourse remained, and the physician could answer whether the loss of it would result from the injury of the spine, and whether the injury received was of a nature to affect the spine. If absence of desire for sexual intercourse would result from the paralysis of nerves emanating from the spinal cord, and the injury was such as to affect the spine, then the absence of such desire became evidence from which the jury might, in connection with other facts proved, infer the paralysis of a part of the nervous system, at least. Without this evi dence, a fact most material to the formation of a correct medical opinion, would have been, and one which, if believed by the jury, must have been, of great assistance in guiding them to a conclusion as to the effect of the injury on the plaintiff. . The evidence was properly received.
The defendant’s counsel insists that the physicians who were examined on the trial, were permitted to go beyond the limits within which experts are permitted to express opinions, and gave opinions that were merely hypothet *296 ical and speculative. The first instance of the violation of the rule relied upon, is in permitting the question to be put to Dr. Morris, “whether the doubling up of the plaintiff in the manner described by him, would be a competent cause for this condition?” The plaintiff had testified that when he became conscious, after the injury, he found himself on a pile of rubbish; made an effort to get up; he was bent forward and the pressure of rubbish was on his back; he was pressed with his breast towards his knees; he had a severe pain across his back and, bowels, and it seemed as if something was torn loose. Since the injury, thé trouble has been in his spine, extending through his sides and up and down the spine ; it prevented him from getting up to an erect position, and it pained him to stand erect. Before the question objected'to was put, Dr. Morris had testified that he examined the plaintiff’s spinal column and found two points of tenderness, that is, he flinched at these points, and complained that it hurt him. There was a promi- ’ nent projection of the spinous process of the upper lumbar vertebra, which might have occurred from the rupture of a ligament. Injuries to the spinal column were thus clearly proved. To make them the basis of a recovery of damages, they must be shown to be the result of the injury of which the defendants were claimed to be the cause.' If they were the result of disease, or if it could be established that the accident could not have caused the injuries found on the plaintiff’s person, the plaintiff would have been no more entitled to recover for them, than if the train had passed on to its destination in perfect safety. It was, therefore, incumbent on the plaintiff to prove that the injuries found upon his person, were caused by the accident., A jury might be able to say that a sufficient cause was shown for the injuries to the back, and yet it would be, as to them, the merest conjecture. A physician only, could safely say that the injuries received could be *297 caused by the doubling up of the plaintiff, as testified to by him. The question was a leading one, but no objection was taken to it on that ground. That difficulty aside, I think the question was entirely competent.
Several questions were permitted to be put to the same physician, as to the time within which a recovery from the effect of the injuries would be most likely to begin; whether he would be likely to recover; what the result would be if not cured; and whether the disease of the spine, from which the plaintiff was suffering, was curable. These questions were all objected to as calling for merely speculative opinions. I do not think the objection is well founded. An important element of the claim for damages was, that the injuries were incurable; that there was to be no improvementin the future. This must rest upon opinion wholly. One way of ascertaining whether the plaintiff would get well, would be to ascertain when—if a cure would ever occur—it would begin. If in the experience of a physician, a cure of the spinal column from an injury would commence within six months from the injury, or if not, that the chances of a cure became almost hopeless, it would furnish very strong ground on which to rest the inference, in this case, that the plaintiff’s injuries were incurable, they having happened more than six months before the examination. Whether the plaintiff would ever recover, was an issue tried before the jury. It could be proved only as matter of opinion, and whether such an opinion, is speculative or hypothetical, I have no doubt of its competency, It is no more speculative than that which, on trials for murder, is almost uniformly given, whether the wound was such as to produce death. It is sometimes difficult to determine when opinion founded on skill ends, and mere speculative opinion begins; but I am quite clear that in the class of questions under consideration, the region of speculation was not reached.
The plaintiff was allowed to ask the same witness *298 whether he had noticed this uncertainty of movement in the plaintiff when he (the plaintiff) was not aware that the witness saw him. Uncertainty of movement is • a symptom of paralysis. It may be feigned, and is not, therefore, one of much significance, unless it is found to exist at a time when all reason for feigning is removed. There would be a stronger reason for apprehending deception, if the party was preparing a physician in whose presence he was as a witness. A cunning knave would not limit his exhibition of his symptoms to the presence of a physician; he would manifest them all the time when in public, and it would only be when he supposed no eye was upon him that he would act naturally and move freely. The action of a person in the plaintiff’s condition, at a time when he is not aware the doctor, whom he expects to call as a witness, sees him, is but slight evidence that he acts naturally. The reason for feigning may be just as strong as if he knew the doctor was watching him. Yet, slight as the evidence is, I think it is competent to go to the jury, and they must determine the weight to which it is entitled. It was suggested that the physician could not know whether he was seen by his patient. This may be true, but it is also true that a man can sometimes say, with absolute certainty, that he is not seen by another. How liable he is to be mistaken, will depend, in each case, on the circumstances in which the persons are placed. In the absence of anything to weaken the evidence, the answer of the witness must be supposed to be given, in view of a state of things that render it in the highest degree improbable that the plaintiff knew the doctor was observing his movements. Thus construing the question and answer, I deem them competent. If the facts were consistent with the probability that the plaintiff knew the physician saw him, it was the right, as well as the duty of the defendant to prove them., The evidence was competent. But if incompetent, it could be pro *299 dnctive of no possible injury to the defendant. At most, it would only tend to prove that when the plaintiff walked with an uncertain movement, he was not feigning. This the law presumed, and it did not require proof to establish it.
Dr. Morris testified that the uncertainty of movement was a symptom of paralysis, and the court permitted the plaintiff’s counsel to inquire what capacity or incapacity does tliis indicate. The question is not very clearly stated, but was intended, doubtless, to call for the answer which it received, and that was as to the degree of physical and mental power the plaintiff possessed in his partially paralyzed condition. Thus treating it, it was clearly competent. In no other way could the jury be enabled to estimate properly the actual present condition of the plaintiff; and this fact it was competent to prove, because it was necessary for the jury to find.
Exception is taken to that part of the charge in which the judge informs the jury that the defendant had it in its power to examine the actual condition of the plaintiff, and if he refused to permit an examination, the defendant might prove it on the trial. ISTo such proof was given, and it is impossible, in the absence of a full report of the proceedings on the trial, to ascertain the reason why the judge made the statement to which exception is taken. As an abstract proposition, I do not doubt but that a party sued for injury to person or property, which is exclusively under the control Of the party suing, has the right to an examination of it, in order to frame his defence in such action. It would be most unjust to permit a plaintiff to recover damages for injuries, the extent and nature of which he kept concealed, and would not permit the person charged with the injury, or his witnesses, to examine. This question can only arise when evidence of such a request and refusal is offered. But it may be proper for a judge, in his charge, to make this *300 suggestion, when counsel press upon a jury the injustice of holding a defendant liable for injuries, when he had no opportunity to give evidence in relation to them. Such an argument is plausible, but utterly unsound. If the judge thinks the jury is likely to be influenced by such an argument, it is his province to inform it that the very difficulty suggested might have been obviated if the party had insisted on a plain legal right. Whether the remark was drawn from the judge for the reason suggested, I have no means of knowing, nor is it very material. The proposition was correct, and we must presume that it was made for good and sufficient reasons, in the absence of all evidence to the contrary.
It was for the jury to say whether the accident was caused by reason of defects in the ties. On this subject there was evidence on both sides. It may be that if we had sat on the jury we would have come to a different conclusion from that arrived at by the jury; but that is not enough; the finding must be either without evidence, or so decidedly against the weight of evidence, that it must have been brought about by either partiality, corruption or gross ignorance. (Heritage v. Hall, 33 Barb. 347. Cohen v. Dupont, 1 Sandf. 260.)
It has been said. in several cases that a new trial will be granted when it appears that injustice has been done; but this is so uncertain a rule by which to test the right to a new trial, that it has not been followed; and if any rule is to be established, the one .which I have stated is the only one which will give to parties the full benefit of a trial by jury. If this mode of trial is to be followed, the people must take it with all its faults, and the courts ought not to interfere with the action of a jury farther than-to see that they have not abused the trust reposed in them. The verdict is not so decidedly against the weight of evidence as to authorize us to set it aside on that ground.
The plaintiff does not, in Ms complaint, specify the *301 particular act of negligence on which he rested his right to recover. He must, of course, prove negligence; and if he should prove some acts of negligence, and the defendants should prove others which the jury thought caused the accident, a verdict founded on such evidence would be regular. It is immaterial, therefore, whether the accident was caused by defective ties, by the improper bolstering of the track, dr by reason of sand or other substance getting into the holes through which the bolts pass, which held the parts of the rail together. If the defendant’s negligence was the cause of the injury in any or either of these modes, it is responsible. I am unable to discover any just ground of complaint against the charge, in respect to the defects in regard to which negligence was imputed to the defendant.
[Onondaga General Term,
October 3, 1865.
Mullin, Morgan, Bacon and Foster, Justices.]
I have given my views upon all the points raised by the counsel for the appellant,, which seem to be of sufficient importance to require examination, and I" have been unable to agree with the learned counsel that any error has been committed on the trial, which calls for a new trial. It may be that more has been recovered than compensation for the injury done to the plaintiff caEed for. On that subject it is not our province to express an opinion; but if it is too large, it is not so excessive as to justify the imputation of either passion or prejudice.
I am of opinion, therefore, that the judgment should be affirmed.
Morgan, J., dissented.
Judgment affirmed.