By the Court.—Van Vorst, J.
Two questions were principally litigated on 'the trial of this action.
One was, whether or not the plaintiff was the owner of the contract, made between Fellows and George R. Hazewell, described in the complaint; and the other whether or not the defendant was guilty of a conversion of the same. As neither on the face of the contract, nor in the assignment thereof by Hazewell to Mr. Genet, is any interest in the plaintiff disclosed, the fact of the plaintiff’s ownership, if it existed, would have to be established by extrinsic evidence.
This the plaintiff sought to prove on the trial. The principal witness called on the plaintiff’s behalf, to testify on this subject, was her husband, George R. *25 Hazewell, one of the parties to the contract. All payments on the contract had been made by him personally. Certainly, no person was in a better condition to show whose money it was, which entered into these payments. The first payment was made, as appears by a receipt indorsed on the contract, on the 20th day of May, 1860. The sum then paid was $2,000 ; another payment of $3,000 was made four years thereafter, in May, 1864.
Upon the trial, George R. Hazewell testified, that the first payment of $2,000 was made at Scranton, in cash. He stated that he got this money in coin or bills from his wife. He says, “ I stated to her when I got it, what use I intended to make of it; she approved of it and gave me the money.”
In regard to the payment of $3,000, made in May, 1864, he testified, that he got this money in bills from his wife, a day or two before the payment was made. That she came to his office and brought the money to him, to pay on the contract, and he paid it over.
The evidence of this witness was much shaken, both upon his cross-examination and through the testimony of other witnesses, in several particulars. Fellows, to whom the payments were made, is in conflict with him, as to the time when, the place where, and the form in which the payments were made. He is contradicted by other witnesses, as to several other matters testified to by him. The learned judge, in his charge to the jury, alluded to these contradictions, but in the end charged that if the jury should find “on the testimony of Hazewell that these $2,000 and these $3,000 were the moneys of Mrs. Hazewell, then on the first point they should find for the plaintiff. ’ ’ The plaintiff’s counsel do not appear to have been satisfied with this limitation of the learned judge in his charge as to the moneys with which thesé payments were made, but sought to extend her right to the contract, through a *26 general proposition, which the judge was asked to charge, that it was hers, if her money went into the contract at any time before the same was transferred to the defendant by her husband. The learned judge, admitting that such abstract proposition was. true, stated that it had no reference to the facts in this action, as proved by the plaintiff, and declined so to charge, to which the plaintiff excepted:
The plaintiff’s counsel also asked the judge to charge, that if Hazewell owed plaintiff, and he transferred the contract in payment of that debt to her, it gave her a title, even if the money paid was not her money. The learned judge declined so to charge, for the reason stated by him, that it was “an entirely different proposition ” from what plaintiff had taken “ during the trialand stated, “ you choose to put yourself upon the fact that her money went into the contract, and we have tried the case on that assumption, and at the end of the plaintiff’s case I asked what was the position taken by the plaintiff on that point, and it was stated that the $2,000 and the $3,000 were the moneys of the plaintiff at the time they were paid.”
The plaintiff’s counsel in this request doubtless relied upon the evidence of Mr. Grenet and the plaintiff, to support the idea that the plaintiff’s money in some other way went into the contract. The evidence to reach such conclusion is not satisfactory. But it was argued on the appeal, by the appellant’s counsel, in support of this proposition, that the evidence shows that plaintiff had allowed her moneys, to the extent of $12,000, to be applied by Mr. Grenet, her agent and attorney, to satisfy a debt owing by her husband in the year 1857, to one of his creditors, and that • Grenet at about that time also paid to Hazewell, of the plaintiff’s moneys $2,500, in addition, to be invested by him for her, which it is now urged went into this contract. But these latter moneys, received two years before the *27 contract in question was made, were not, and could not be the moneys, which, under the evidence oí Hazewell, went into that contract. It is, however, attempted by the plaintiff’s counsel to connect this latter contract with one previously made, called the Woodman and Fellows contract. But whatever money of plaintiff went into the Woodman and Fellows contract, if any, was wholly lost to her, as that contract was foreclosed by Fellows, through the default of the other party in making payments thereon, long before the contract of 1860 was made, and the property was bought in by Fellows ; and that contract formed no part of the consideration of the contract now under consideration, as Fellows distinctly testified on the trial.
These claims nów interposed by the appellant’s counsel, would place the case before the jury in opposed positions. One ground distinctly and clearly taken under the evidence was, that it' was with the plaintiff’s identical moneys, placed by her in her husband’s hands for the purpose, that the payments upon the contract in 1860 and 1864 were made.
This is unqualifiedly testified to by the plaintiff’s husband, who made these payments. If his evidence was true, then the contract could not have been turned over in payment of a debt from her husband to the plaintiff, and it would have been her property in virtue of such payments. Mor does the evidence sustain the proposition that her moneys went into the contract, otherwise than by force of such payments.
We cannot discover any evidence which would have justified the jury in finding that the contract was turned over to Genet by Hazewell, in payment of a debt due from him to the plaintiff. And we conclude that the learned 'judge was right, in his instructions to the jury, 'in limiting the plaintiff’s demands as he did, under the circumstances of the case, and the course of the trial, to the question as to' whether the payments *28 were made with her moneys as testified to by her husband, and if they were, the plaintiff would be entitled to a verdict.
A party should not be allowed to ask from the jury a verdict upon one of two or more claims, wholly opposed to each other.
A case should not be allowed to go to the jury in such form, that in the event that a claim distinctly interposed by one of the parties, sustained by his evidence, should be rejected by them, they might fall back upon another position upon which to rest a verdict, wholly irreconcilable with the one disallowed, without sufficient evidence to support it.- Truth and justice require that a party should be limited on the trial to a consistent statement of a claim.
“ AUegans contraria non est audiendus ” is a rule of logic, and is applied in courts of law.
The learned judge states that the plaintiff’s counsel limited himself to a distinct position with respect to • the plaintiff’s rights to the contract, and having done so., there is no error in confining the plaintiff to such position (Paige v. Fazackerley, 36 Barb. 392).
The remaining question is, was there a conversion. This inquiry could only, however, arise, should the jury find that the contract was the plaintiff’s property. Hazewell testified that he received the contract, with his wife’s assent, from Genet, to whom he had assigned it in 1860.
He testifies that he was authorized to borrow money on the contract, or if he saw a good opportunity, he was authorized to sell it. In his words “ I- was to borrow money on it, or sell it to obtain money for my own purposes. I was to use it as I pleased, either to sell it or borrow money on it.”
Hazewell assigned and delivered the contract to the defendant, as he testifies, as security for moneys to be loaned thereon, to the extent of $2,000,.only $250 of *29 which was, however, paid. If that statement is true, the defendant, to whom a tender has been made of the amount so claimed to have been advanced upon the contract, and who refused to redeliver it, is liable, in the action for a conversion, and it would have been the duty of the jury so to decide.
The learned judge charged the jury that if plaintiff was the owner, and Hazewell had not been invested by hér with the power of disposing of it as he pleased, but only for the purpose of raising money on it, and that if Hazewell parted with it, upon a promise on the part of the defendant to furnish $3,000, only $350 of which was paid, that then the defendant was guilty of a conversion of the contract. The judge’s charge in this respect was correct. The testimony of Hazewell in regard to an agreement to loan $3,000 on the contract is denied by the defendant. He swears that he purchased it from him.
The consideration for the purchase, as testified to by the defendant, was $350, paid by him to Haze-well in cash, and the further payment of $3,000 and upwards, expenses of an action pending in. equity in the State of Hew Jersey, in favor of one Tilford against the defendant, which expenses, as claimed by defendant, were occasioned by the improper interference of Hazewell in such suit, in favor of the plaintiff therein, he having made certain statements and claims in that action prejudicial to the rights of the defendant, growing out of a policy of life insurance the subject of that action, and which had been theretofore assigned by Hazewell to the defendant.
These claims and statements of Hazewell, adverse to the defendant’s interests, interposed in such action, were afterwards admitted by him to be unfounded, and he withdrew the same ; but the action could only be withdrawn, and the defendant’s interests secured, *30 by the payment of certain expenses incident to the action, amounting to about $2,000.
These facts were testified to by the defendant, who also stated that he refused to pay such expenses, and that Hazewell, who had occasioned them, agreed to do so. Hazewell proposed to raise -the funds, according to the defendant’s evidence, by disposing of the contract for that purpose. In their attempts to do this they were unsuccessful, and Hazewell in the end proposed to sell, and did sell the contract to the defendant for $250 cash, but defendant was to pay, in addition, the expenses of the suit in Hew Jersey, which he after-wards did.
This is, in short, the defendant’s account of the transaction, through which he acquired title to the contract.
The plaintiff’s counsel submitted to the judge various requests to charge the jury upon this branch of the ease.
The judge was in substance requested to charge the jury, that if they believed the money of the plaintiff, went into the contract, defendant was not a bona fide purchaser thereof.
That the transfer to the defendant was entirely unauthorized by her, and did not operate to deprive her of her interest.
He also asked the judge to charge' that the consideration from the defendant to uphold the transfer must be money and not a precedent debt, even1 although Hazewell may have been clothed with an apparent power to deal with the contract.
The judge did charge, that if the jury should find from the facts existing in the case that the plaintiff gave her husband the apparent control of the contract as owner, the defendant had a right to deal with him as the owner, and if in trusting to that he paid money upon it, he is a bona fide holder. And further, that if *31 defendant made the agreement testified to by him upon the faith of the contract and assignments, and in the honest belief that the same belonged to Haze-well, and without notice that the plaintiff had any interest therein, and on such belief, and on the faith of the contract and assignment, paid the money testified to by him, that would entitle him to a verdict.
He also charged that if Hazewell’s account of the transaction was true, and the plaintiff was the owner of the contract, she would be entitled to a verdict.
If on the other hand the defendant’s account of the transaction was true, then all he did pay was money, and there was no precedent debt satisfied, because, on the faith of that assignment, defendant went to New Jersey and paid certain moneys, and therefore it was not a precedent debt.
We are of opinion that the charge of the learned judge was correct.
In regard to the moneys paid in New Jersey, the same was not a legal debt of Hazewell until he undertook to pay it.
It was, upon the defendant’s evidence, an expense occasioned by the unjust interference of Hazewell in that litigation. Hazewell might feel himself in honor bound to pay it; defendant declined to pay it. We cannot say that he could have been legally compelled to pay it. It was to be paid, however, as a condition to the withdrawal of the litigation which Hazewell had encouraged. It was doubtless for the advantage of the defendant that it should be paid, still, he might, as he has testified he did, decline to advance the money.
Hazevzell undertook to pay it himself. He thought he was under a moral duty to do so. And in selling the contract to defendant he provided for the payment of these expenses by the defendant. In this view the contract was not turned over to pay a precedent debt.
*32 It was in part to discharge an obligation, then first assumed and agreed to be paid.
We think it was fairly left to the jury to determine whether they would accept the statements of defendant or Hazewell in regard to this transaction, and as to the true consideration of the assignment. If the jury should believe Hazewell under the judge’s charge the plaintiff was entitled to a verdict.
The jury evidently did not believe him, but accepted the defendant’s account as true. The jury also passed upon the question of Hazewell’s authority under the evidence.
If he exceeded his powers in making the transfer the plaintiff’s title would not have been affected, for a purchaser of a chose in action must abide by the case of the person from whom he buys ; and no title passes for value even unless the holder is clothed with title and power (Moore v. Metropolitan Bank, 55 N. Y. 41; McNeil v. Tenth Nat. Bank, 46 Id. 325; Green v. Warnick, 64 Id. 224; Cutts v. Guild, 57 Id. 229; Shaffer v. Reilly, 50 Id. 61).
But the question of Hazewell’s power, who had been intrusted with the contract, having an assignment in blank indorsed thereon, as also the consideration paid therefor, was for the determination of the jury under the evidence and the judge’s charge.
The extent of his power was a question of fact, and the jury has passed upon it.
As no substantial error is found in the judge’s charge or in his refusals to charge, we cannot interfere with the result, as there is evidence to uphold the verdict.
It may well be that the defendant secured a profitable bargain, and if the plaintiff had in truth an interest in the contract .the result may be to her pecuniary injury.
But these consequences cannot be remedied here, unless there was error in the trial.
*33 If the plaintiff intrusted her contract to her hus - band, to sell or dispose of as he might deem best for his own advantage, she cannot reasonably complain if the defendant’s action, in treating with her husband, has resulted in a profitable arrangement for himself.
We .have examined the exceptions taken by the appellant during the course of the trial, and can discover no error which would justify us in disturbing the result.
The motion for a new trial was properly denied by the judge who presided at the trial term.
There was a marked conflict in the evidence, and the credibility of the witnesses, and the truthfulness of their statements, was fairly submitted to the jury, in whose presence they were severally examined. The jury had the advantage of observing the demeanor of the witnesses in giving their evidence. This feature can never be reproduced on the argument of an appeal. The rule is well settled that when there is a conflict in the evidence upon material points, and when the truthfulness of witnesses on one side or the other is involved, the verdict of the jury will not be disturbed on appeal (Mouse v. Sherrick, 63 Barb. 21; Beckwith v. N. Y. Central R. R. Co., 64 Barb. 299).
If there was any interest in the plaintiff in the contract it was latent, as neither upon the face of the same, nor in the assignment thereof, was any such interest disclosed.
The assignment from Hazewell to Genet shows no trust, nor does it therein appear that the same was made for a nominal consideration only. The large consideration, expressed in the paper to have been paid on this assignment, left no room on the part of any one to presume that Genet held it in trust for any one or any person. The re-assignment from Genet to Hazewell was unqualified in its terms, and in itself contained no notice that Hazewell was not the equitable as *34 well as the legal owner of thd same, or that the same was clogged in his hands, with any right or interest in any one, which limited his power to dispose of the same as he pleased. The plaintiffs principal witness to establish by parol evidence the secret trust in her favor, as well as the terms and conditions of the transfer to the defendant, was evidently discredited by the jury, who either failed to discover from the evidence any interest in the plaintiff to be protected, or any excess of authority on Hazewell’s part in selling and assigning same; a risk which parties must always assume if they resort to such exceptional methods of creating and protecting right, the disposition of which is well left with the jury.
The result reached is that the judgment and order appealed from is affirmed with costs.
Speir, J., concurred.