BARBOUR, J., did not concur in this opinion, but was in favor of affirming the order on the ground that the verdict settled the plaintiff's right to nominal damages, and that the court, on this appeal, could amend the verdict accordingly, or might treat it as having been amended in form to correspond with its legal effect, and affirm the order.

Order affirmed, with $10 costs.

## COURT OF APPEALS.

BETSEY BERNHARDT agt. THE RENSSELAER & SARATOGA RAILROAD COMPANY.

In actions for injuries resulting from negligence, if it appears from the evidence that the plaintiff (or the deceased who is represented by him) was guilty of *any negligence which contributed to the injury*, there can be no recovery; and although as a general rule, questions of negligence belong exclusively to the jury, cases may arise in which the proof of negligence would be so clear and irresistible that the court would be justified in granting a *non-suit*. If, however, there is *any conflict in the evidence* going to establish any of the circumstances upon which the question depends, it must be left to the jury.

In an action against a railroad company for damages for injuries in causing death, if it appears by the evidence that the engine could have been stopped in time to have *saved the life* of the deceased, the defendant would be liable, notwithstanding the impossibility of entirely preventing the accident.

*It seems*, that where there is *some evidence* tending to establish such negligence, (although against the weight of evidence adduced by the defendants,) the verdict of the jury finding damages against the defendants will not be disturbed.

*March Term*, 1861.

THIS action was prosecuted to recover damages for the alleged wrongful killing of Gustavus Bernhardt, by the defendants, in November, 1846, by running a locomotive engine against him, in the city of Schenectady, producing injuries of which he died.   The defendants, by their answer, denied all negligence or improper conduct on their part,

Bernhardt agt. Rensselaer & Saratoga Railroad Company.

and claimed that the injuries were occasioned by the negligence of the deceased. The cause was tried at the Rensselaer circuit in February, 1859, before Hon. H. Hogeboom and a jury. At the close of the plaintiff's evidence, the defendants' counsel moved for a non-suit upon the grounds,

1. That no negligence on the part of the defendants had been shown. 2. That the evidence showed that the injuries complained of were occasioned by the carelessness and negligence of the deceased. 3. That the evidence showed that the carelessness and negligence of the deceased contributed in a material degree to the injuries complained of. 4. That it did not appear that the plaintiff was without fault in producing the injuries complained of.

The court overruled the motion, and the defendants' counsel excepted. The jury found a verdict for the plaintiff for $4,000 damages. The defendants moved for and obtained a new trial on a case, at the Albany-special term, December, 1859. (*Reported* 18 *How. Pr. R.*, 427.) From this decision the plaintiff appealed to the general term of the third judicial district, where the decision at special term was reversed, and judgment ordered upon the verdict, with costs. (*Reported* 19 *How. Pr. R.*, 199.) From the judgment of the general term the defendants brought an appeal to this court.

W. A. Beach, *for defendants, appellants.*
Lyman Tremain, *for plaintiff, respondent.*

Selden, J. The only questions in this case arise upon the motion for non-suit. When the motion was first made at the close of the evidence, on the part of the plaintiff, it is clear that a case had been made which the judge was bound to submit to the jury. Up to that time there was no proof that the engine bell had been rung at all. On the contrary, the only witnesses who had spoken on that subject, viz., Sherman and West, had both testified that they

heard no bell. For aught that appeared, therefore, the deceased had gone upon the track for a legitimate purpose, without any notice whatever of the approach of the engine, which, from the slow rate at which it was moving, would hardly of itself have attracted attention amid the noise and confusion proceeding at the time. But the case was very materially changed by the evidence subsequently adduced by the defendants, and the motion having been renewed after this evidence was given, if, upon the whole case, the plaintiff should have been non-suited, the judgment must be reversed.

It is insisted, 1st. That there was no evidence of negligence on the part of the defendants to be submitted to the jury; and 2d. That the proof of negligence on the part of the deceased was so clear and conclusive, that the plaintiff should have been non-suited on that ground.

I shall consider the last of these propositions first. In actions for injuries resulting from negligence, if it appears from the evidence that the plaintiff, or, in cases like this, the deceased, was guilty of any negligence which contributed to the injury, there can be no recovery; and although as a general rule, questions of negligence belong exclusively to the jury, cases may no doubt arise in which the proof of negligence would be so clear and irresistible, that the court would be justified in assuming, without submitting the question to the jury, that negligence was established. At the same time it is obvious, considering the nature of the question, that such instances must be rare. If there is any conflict in the evidence going to establish any of the circumstances upon which the question depends, it must be left to the jury. If there are inferences to be drawn from the proof, which are not certain and incontrovertible, they are for the jury. If it is necessary to determine, as in most cases it is, what a man of ordinary care and prudence would be likely to do under the circumstances proved—this in-

volving, as it generally must, more or less of conjecture—can only be settled by a jury.

It is not easy to suppose a case in which the court would be warranted in holding, as matter of law, that negligence was proved. If, however, an individual in a railroad depot, where engines are constantly moving about, should, without any ostensible object or apparent reason, place himself so near one of the tracks that an engine could not pass without hitting him, and while there, should be knocked down and injured by an engine, with its bell constantly ringing as it approached, I am inclined to think that it would be the duty of the court to hold the party injured, guilty of negligence, without taking the opinion of a jury.

In the present case, the deceased was not upon the track without a legitimate object, but went there upon a sudden emergency. He judged wrong as to having time to secure his hat before the locomotive would reach him, and the question is, whether this error betrayed a want of ordinary prudence. In determining this question, the time, the occasion, and all the surrounding circumstances are to be taken into consideration. Men of prudence do not judge with the same accuracy amid noise and bustle and confusion as at other times. Here, to all the ordinary stir of an extensive railroad depot, was added the disturbance produced by a violent wind and the simultaneous movement of a company of soldiers. Strangers suddenly set down in such a place, cannot be expected to act with the same precision of judgment as under more familiar and less disturbing circumstances. It is for this reason that, while officers and employees of a railroad company, who are upon their own ground engaged in their customary occupations, with an experience and familiarity with the business that enables them accurately to appreciate every danger, are held, *in such places*, to the exercise of the strictest vigilance and the most exact judgment. The conduct of travelers upon the road is more liberally regarded.

HARVARD LAW SCHOOL LIBRARY

Bernhardt agt. Rensselaer & Saratoga Railroad Company.

Can it be said, then, in view of these obvious considerations, that the court was bound to hold the deceased guilty, as a conclusion of law, of a want of ordinary care, without even submitting the question to a jury? I think not. The deceased must have supposed that he had time to seize his hat and get off of the track before the engine would reach him. The result shows that in this he erred; but the proof is not specific and clear as to the elements of time and space upon which his judgment was based. For the court, therefore, to hold that his mistake was inexcusable, would be to establish the principle that in every such case, error in judgment is *per se* culpable negligence. This, I think, would hardly do. Whether, in such a case, the error was excusable or not, can only be settled by a jury, in view of all the circumstances of the case so far as they are disclosed, and especially when, as in the present instance, the deficiencies in the proof leave the case open to many uncertain inferences. The judge was right in submitting this case, so far as the point under consideration is concerned, to the jury.

The next and only remaining question is, whether the plaintiff should have been non-suited on the ground that there was no evidence of negligence on the part of the defendants to be submitted to a jury.

To have omitted to ring the bell would have been negligence, and there is some little conflict in the evidence on this subject—two witnesses having sworn that they heard no bell. But there is such a preponderance of evidence that the bell was rung, that the jury would not have been warranted in finding that it was not, and had they done so, it would have been the duty of the supreme court to set aside their verdict as contrary to the evidence.

Again: it would be impossible for the jury, upon the evidence given, to say that the engineer was negligent in not stopping the engine before it came in contact with the deceased, because, although the proof is not very clear and

definite as to the distance between the deceased and the engine when the former stepped upon the track, it was evidently very short. There was nothing, therefore, upon either of these points to be submitted to a jury.

This, however, is not decisive of the case. If the engineer could not avoid all collision with the deceased, it was nevertheless his duty to cause the injury from that collision to be as slight as possible. If the engine could have been stopped in time to *save the life* of the deceased, the defendants would be liable in this action, notwithstanding the impossibility of entirely preventing the accident. It is precisely here that the charge of negligence against the defendants rests, if it has any foundation at all.

The evidence bearing upon this point is decidedly conflicting. If we take the testimony of the defendants' witnesses, White and Beach alone, it would appear that the deceased was upon the track in front of the engine, and upon being struck by the cow-catcher was immediately thrown down and run over by the wheel of the engine; that in fact no appreciable time intervened between the first collision and the fatal injury. But the testimony of the witness West, the porter of the Temperance House, presents the matter in a very different light. Upon his direct examination, speaking of the deceased, he said: " he was close up to the track, and I saw him *entangled* with the engine; within *a minute or two after*, I saw him standing still." Upon his cross-examination he said: " I could not see the cow-catcher hit him from where I stood. The first movement Bernhardt made after the cow-catcher struck him, he stepped a step northeast; the next thing was, *he stopped and could not move; he was stepping along side of the engine;* he was then on the side of the engine on the west side, and north of the front end of the cow-catcher; the track there run about north and south; I could not see then whether the cow-catcher was then in contact with him; I think I saw some part of the engine in contact with

some part of his person; I think it rubbed him a little back of the cow-catcher; three or four feet back from the rear." Assuming the honesty of this witness, those details show a very different case from that to be drawn from the more brief and general statement of the other witnesses. The inference from this testimony is, that instead of being struck and instantly thrown down by the cow-catcher, Bernhardt was first caught probably by some part of his clothing; that he endeavored to extricate himself, but without success, and that he kept his feet and continued the struggle until he had got past the cow-catcher and opposite the engine. The testimony admits of no other interpretation consistently with the integrity of this witness. If this account is correct, it clearly establishes the charge of negligence. It proves that the person in charge of the engine could not have had his eyes upon the track before him at the moment of the first contact; because it is shown that the engine was moving so slowly that it could be almost instantly stopped. If, then, the engineer had seen the deceased caught by the cow-catcher, he could easily have stopped before all that is related by the witness West had occurred, and thus the life of Bernhardt would have been saved. This view of the case receives some confirmation from the testimony of Anderson himself, who had charge of the engine. He says: "I did not see Bernhardt when the cow-catcher first struck him; Bernhardt was about down on the track when I first saw him." If this witness permitted his attention to be diverted from the track upon which he was moving, to the military company or other object, in such a place and at such a time, he was inexcusable, and the company is liable for the consequences. Whether this is really so or not, is of no importance here. It is sufficient that there was some evidence tending to establish it. The duty of reconciling this evidence with the other proof in this case, or of determining the credit to which the witnesses were respectively entitled, could

only be performed by the jury, and the judge was therefore right in submitting the case to them. I have said nothing in regard to the fact that the engine was left, at the time of the accident, in charge of the fireman, although it is at least doubtful whether that alone would not have made it necessary to submit the case to the jury upon the question of negligence on the part of the defendants, as the incompetency of the fireman to manage the engine, unless incontrovertibly established, must have been passed upon by the jury.

It follows from these views, that the judgment of the supreme court should be affirmed.

NOTE.—If this case is to be considered and followed as authority upon the facts of negligence, *railroad companies* may well despair of ever being able satisfactorily to establish by evidence their freedom from negligence when charged with it in any case. On looking at the case, it would seem that Judge GOULD, at special term, (18 *How.*, 427, where he stated the plaintiff's testimony very fully,) came to a correct conclusion when he said that "his (deceased's) carelessness is proved beyond mistake or contradiction;" and we think he might have said that it was not only carelessness, but *presumption* and *daring*. However, the cause having been submitted to the jury, they must have found, not only no carelessness or negligence on the part of the deceased, but positive negligence on the part of the defendants, as they found a verdict of $4,000 damages against the defendants. The general term, by INGRAHAM, J., (19 *How.*, 199,) concluded that "although the evidence is such as to have sustained a verdict in favor of the defendants, if the jury had so found, I do not think that the negative of the question as to the plaintiff, whether culpably negligent or not, to be so clear as to warrant the court to decide thereon as matter of law, and refuse to submit it to the jury. And more especially should such a question be submitted to the jury, where some of the matters relied upon to make out negligence depend upon contradictory testimony." Therefore, without passing upon the question whether the verdict of the jury was against the weight of evidence, although the exceptions brought up the whole case on appeal, the verdict of the jury was sustained.

It appears that there were but two principal facts claimed as negligence against the defendants, which came up before the court below. One was, whether the bell on the engine was rung; and the other, whether the engine could not have been stopped if the man in charge had kept a proper look-out before coming in contact with the deceased. Upon both of these points the court of appeals say there was such a preponderance of evidence in favor of the defendants, that the jury would not have been warranted in finding against them, and had they done so, it would have been the duty of the supreme court to set aside their verdict as contrary to evidence.

But the court of appeals, on looking into the testimony of the principal witness for the plaintiff, West, has discovered some testimony (if testimony it may be called, which the courts below did not discover) by which it has come to the conclusion that

## SUPREME COURT.

the charge of negligence was clearly established against the defendants, in *not stopping the engine after it had come in contact with the deceased, and before he was fatally injured*—giving the testimony of the witness in detail.  It seems, that the court would have been spared the allusion to that testimony, if they had looked a little further into the case, or to Judge GOULD'S opinion, where the principal testimony of this *same witness* is given very fully.  He there says that "it was just before this engine came along beside the deceased, that his hat blew off, and the deceased started in pursuit of it, and in so doing *stepped upon the track where the engine was coming, just in time to put his person or his foot* (the witness can not say which) *within reach of the cow-catcher of the engine; he was hit, thrown down, his left leg was run over by one wheel or two of the forward truck;* THE ENGINE WAS INSTANTLY STOPPED, *not having run over five feet after hitting the man,* and the man was taken up.  He died in about a week, from mortification consequent on the amputation of the leg." This testimony was corroborated by two credible witnesses for the defendant.—REP.