## HARDER *v.* ROME, W. & O. R. Co.

(*Supreme Court, General Term, Third Department.* July 2, 1888.)

RAILROAD COMPANIES—INJURIES TO PERSONS ON TRACK—CONTRIBUTORY NEGLIGENCE.
 Plaintiff was struck by an engine while crossing defendant's track. He had been drinking to some extent, and had started to the station, and, leaving the street, went by a shorter route across two tracks and an open space between, where persons frequently crossed, walking slowly, without looking for the engine, which had just gone by on one track, and was returning on another, at a rate not exceeding 10 miles an hour. The plaintiff did not see nor hear the engine, nor did the engineer see him, though persons present tried to attract the attention of both. Some witnesses heard the bell ring, and others did not. There was nothing to prevent plaintiff from seeing the engine for 130 feet before he stepped on the track. *Held,* that the negligence of plaintiff contributed to his injury, and the court properly granted a nonsuit.[1]

Appeal from circuit court, St. Lawrence county.

Action by Benjamin Harder against the Rome, Watertown & Ogdensburgh Railroad Company for personal injuries. The plaintiff attempted to walk across the defendant's track, and was struck by its engine, and injured. This action was brought to recover damages for the injury; the complaint charging the defendant with negligence. The injury was sustained at Ogdensburgh. Two tracks of the defendant's road so intersect Commerce street, in the city of Ogdensburgh, as to form, at the south-easterly angle of intersection, a triangular lot of land. This lot fronts upon Commerce street upon the west, and the track forms the hypotenuse of the triangle, extending, with a slightly inward curve, beyond the entire lot. The point of the gore or triangle is used for a small garden. The Utica House fronts on Commerce street. Its northerly side is at right angles to the street, and extends easterly until the rear corner of the main building is within seven feet and nine inches of the nearest rail of defendant's track. A kitchen extension of the hotel, less than half the width of the hotel, extends, in line with its south side, still further westerly twenty-two feet, until its rear corner is within four feet and nine

---

[1] As to plaintiff's contributory negligence in actions against railroad companies for injuries received on the track, see the note to Railroad Co. v. Colman's Adm'r, (Ky.) 8 S. W. Rep. 875; Railroad Co. v. Womack, (Ala.) 4 South. Rep. 618.
 As to the province of the court and jury in determining negligence, see Barnes v. Sowden, (Pa.) 12 Atl. Rep. 804, and note; City of Birmingham v. McCrary, (Ala.) 4 South. Rep. 630.

inches of the same rail.  There is a rear side-door of the hotel opening to-
wards this track of the railroad.  From this door to within four feet five
inches of the rail is a platform.  This extends along this rail for about six-
teen feet, and is between it and the house, and belongs to the house.  Directly
north of this platform, across the two tracks, and an open space beyond, is
the defendant's passenger station.  It is a common practice for foot passen-
gers to walk across the tracks, and this open space between the hotel and the
station.  Passenger trains sometimes stop opposite this platform, and passen-
gers get on and off the cars there.  Commerce street extends along in front
of the station.  On June 27, 1887, the plaintiff, at about 4:15 o'clock P. M.,
intending to take the 4:30 P. M. train, then standing upon another track upon
the opposite side of the station, entered the Utica House from Commerce
street, walked through it, and out of the rear door, upon the platform.  He
had been drinking to some extent.  He first stepped from the platform upon
the nearest track, when he observed an engine upon one of the tracks near
Commerce street.  He stepped back upon the platform.  The engine moved
past him upon the outer track to a point beyond a switch, and, as the plain-
tiff says, behind the kitchen extension.  The switch was about 86 feet beyond
him, and it is probable the engine went several feet beyond it.  The switch
was moved, and the engine started to return upon the track nearest the plat-
form.  Standing upon the edge of the platform, one could see 130 feet, meas-
uring to a point between the two nearest rails.  Standing within a foot of the
rail, one could see 190 feet, measuring to a like point.  Standing on the
middle of the platform, that is, half way between the door and its outer edge,
one could see only 45 feet.  The plaintiff stepped upon the nearest rail when
the engine was within 40 feet of him.  Witnesses on the part of the plaintiff
did not remember hearing the bell rung.  Witnesses on the part of the de-
fendant testify that they did hear it.  The rate of speed of the engine when
it struck the plaintiff is variously estimated from two to ten miles an hour.
The engineer in charge of the engine did not see the plaintiff.  Other persons
did see, and shouted to him, and to the engineer, but did not attract the at-
tention of either.  The court granted a nonsuit, and plaintiff appealed.

Argued before LEARNED, P. J., and LANDON and INGALLS, JJ.

J. W. *Stone*, for appellant.  E. B. *Wynn*, for respondent.

LANDON, J.  From the facts as given above, we think the plaintiff's neg-
ligence contributed to his injury, and the nonsuit was proper.  He undertook
to cross the tracks where he had, at best, but a mere license to cross.  From
the curvature in the tracks, and intervening erections, his range of vision in
a south-easterly direction was limited, and therefore a vigilance correspond-
ing to the obvious danger was required.  It may be said that this situation
imposed greater and more active vigilance upon the defendant.  This may be
conceded without in the least exempting the plaintiff from like vigilance.
The way was open to him to the station by Commerce street.  The statute
law, and, possibly, the ordinances of the city, had, with respect to that and
other streets, imposed certain definite duties and restrictions as safeguards to
the plaintiff and others.  He voluntarily left the street, which was protected
by these definite and specified safeguards, and took a course protected only by
common-law regulations.  These are vaguely defined as enjoining upon the
defendant the duty to use, in respect to persons crossing the tracks, reason-
able care in the movement of its trains.  *Barry's Case*, 92 N. Y. 289; *Bryne's
Case*, 104 N. Y. 362, 10 N. E. Rep. 539.  Possibly the defendant did not use
that care.  But it is plain that the plaintiff, if he had been vigilant, as he
ought to have been, could have seen this approaching engine in ample time
to avoid it.  With his face away from the engine, he slowly moved upon and
across the track.  Probably his senses were less acute in consequence of the
liquor he had been drinking.  Probably, as the engine had just passed in one

direction, he did not think it would return in the other. He did not see the engine at all before it struck him. He did not hear the warnings that others cried out to him. Plainly, whatever the cause, his vigilance was dormant, and not active. The judgment should be affirmed, with costs.

LEARNED, P. J., and INGALLS, J., concur.