### ATWATER *v.* TOWN OF VETERAN.

*(Supreme Court, General Term, Fourth Department.    April, 1889.)*

1. DEFECTIVE HIGHWAYS—CONTRIBUTORY NEGLIGENCE.
  In an action for damages to plaintiff's team and wagon, caused by a defective highway, it appeared that a very narrow pass along the mountain side had filled, at three points, with ice and snow; that where plaintiff's servant entered the Narrows with the team and wagon he could not see these snow-slides; that when he approached the point of danger he was warned not to attempt to pass; that he replied he could not turn back, which was true; that he passed two of the snow-banks, his wagon wheels breaking through into the usual track; that in attempting to pass the third point the wheels failed to break through, and the wagon slid down over the declivity, resulting in the injury for which damage is claimed. Defendant asked a nonsuit on the ground that, from the facts proven, the court must hold, as a matter of law, that plaintiff, through his servant, was guilty of contributory negligence. *Held,* that where the inferences to be drawn from the evidence are uncertain, and where men of ordinary prudence might differ as to the character of the act, the question of contributory negligence is one of fact for the jury.[1]

2. SAME—NEGLIGENCE OF SERVANT.
  The burden of proof was on plaintiff to show that the injury was caused by no act of negligence on the part of himself or servant; but it availed nothing for defendant to show that plaintiff's servant did that which no extremely cautious, highly prudent, or excessively timid person would have done, as plaintiff's servant was only bound to exercise that care and caution which a person of ordinary prudence would have exercised under the same circumstances.

Appeal from circuit court, Schuyler county.

Action by Burton W. Atwater to recover from the town of Veteran damages for the accidental killing of a horse and injuries to a wagon belonging to the plaintiff, a resident of the town of Dix, Schuyler county. On the 7th of March, 1887, a Mr. Smart, the father-in-law of the plaintiff, and his servant or agent, started with plaintiff's horses with four bags of feed in a wagon to take to mill, to have ground at Millport, several miles distant from the residence of the plaintiff, and the injuries sustained to the plaintiff's property were occasioned by an accident on a piece of mountain road called the "Narrows," which is cut into the steep side of the mountain or hill to enable a carriage track to be made there, 8 or 10 feet wide, for a distance of perhaps one-third of a mile, with occasional points (4 or 5) where turn-outs can be had in case carriages meet and pass. On the argument appellant concedes: (1) It was the duty of the commissioner of highways of the town of Veteran to use ordinary diligence in keeping the highways of the town in a reasonably safe condition. (2) The commissioner did not perform this duty, and was guilty of negligence. (3) A person who, in the lawful use of a highway, meets with a defect or obstruction, may yet proceed if it is consistent with reasonable care and prudence so to do, and this generally is a question for the

---

[1] Respecting contributory negligence in the use of defective highways, and instructions on that subject, see City of Kinsley v. Morse, (Kan.) 20 Pac. Rep. 217; Village of Jefferson v. Chapman, (Ill.) 20 N. E. Rep. 33; Morrison v. Shelby County, (Ind.) 19 N. E. Rep. 316, and note; City of Austin v. Ritz, (Tex.) 9 S. W. Rep. 884, and note; Schonhoff v. Railroad Co., (Mo.) 10 S. W. Rep. 618.

jury, depending on the nature of the defect or obstruction and the circumstances surrounding the party. When plaintiff rested, defendant asked for nonsuit, on the ground that under the facts proven the court must hold, as a matter of law, that plaintiff, through his servant, Mr. Smart, was guilty of contributing to the accident on which this suit is brought; that the facts proven do not establish a cause of action against defendant on the ground of the contributory negligence of the plaintiff. The motion was denied, and defendant excepted. At the close of the evidence in the case the motion was renewed, and the court was asked to direct a verdict for defendant upon the same grounds stated on the motion for a nonsuit. The court denied defendant's motion, and an exception was taken. It appears that the road where the accident occurred is only about 8 feet wide. That the average width of the Narrows for this 40 rods is probably from 10 to 14 feet; in some places they are wider than others. At this particular spot where the wagon went off, the width is about 8 feet. There is no protection to any portion of the lower edge of this highway, and the depth of the ravine is about 100 feet. From a judgment entered on a verdict in favor of plaintiff, for $184.50, defendant appeals.

Argued before HARDIN, P. J., and MARTIN and MERWIN, JJ.

*Reynolds, Stanchfield & Collin,* for appellant. *Cole Bros.,* for respondent.

HARDIN, P. J. Appellant's learned counsel, after frankly and openly conceding that the defendant's officers were guilty of negligence in respect to keeping the highway in a reasonably safe condition, contend that the plaintiff or his servant was guilty of contributory negligence, and that upon the facts presented in the evidence the court ought to have ruled, as a matter of law, plaintiff could not recover by reason of such contributory negligence. Upon looking into the evidence, we learn that Mr. Smart, the plaintiff's agent, reached the Narrows about 1 o'clock on Monday afternoon, the 7th of March. He received no warning or notice that the road was in an insecure and unsafe condition. The witnesses differ a little in respect to the distance from the entry to the Narrows to the point where the accident occurred. There is also some difference in the language used by the witnesses in describing the precise circumstances under which the accident occurred, and the situation in which Smart found himself when called upon to determine how to extricate himself from the difficulties that confronted him. In his testimony he says, viz.: "I started from home and I went on the road, and I saw nobody that I recollect at all,—no person whatever,—until I got into those Narrows,—what is called the 'Narrows.' I got in so that I could not turn around, and could not do nothing, anyway. This is the road I usually traveled when I went to to Millport. I went in a ways, and I saw a man ahead of me, and I went to where he was. I went over a little bit of a slide; it went over nicely. By a 'slide' I mean snow that slid from the mountain above; and as I passed over that this man stood right back against the rocks, and he said, 'You can't get over yonder;' said he, 'You can't get over yonder at all;' said he, 'You can't get over.' I said, 'I can't stand here, because my horses won't stand, and I can't do nothing with them, it is too narrow;' and I said, 'I am going over that little drift there and stop.' All the conversation there was, I said I could not stand there. As I started a little bit I stepped to the upper side of the wagon. I said to the boy that was with me, 'You keep close to me;' and the wagon started and went down the hill. I went down the hill. * * * When I started to drive across this place, I had got about sixteen rods when I began to slide off at this particular spot. * * * The place where I stopped before I got to these drifts, the widest spot, wasn't over twelve feet, and isn't now; it wasn't twelve feet then. There was snow in the road at that time, and there was, and there had been, ice. At the place where I stopped there was snow close to the bank, so I got as close to the bank as I could,

and I was as close to the bank as I could get all the way, so that I couldn't get closer without running on the bank or the snow and tip over. When I stopped, the lower wheel of my wagon was within six inches of the edge of the precipice, as I should judge; of course, I didn't get off and measure it. As near as I could judge it was not over six inches. It slid right off, anyway. You could not turn around there and I couldn't get a horse by after it was unhitched, and I couldn't nowhere between that and where I got into the Narrows. I could not have stood by and unhitched my horses. My horses were quite uneasy when I stopped, and they would not stand, and I had no man. This gentleman that was there, of course he didn't know anything about the horses, and he couldn't help me, and he didn't help me. There was a little spot beyond this drift where I stood that I saw was a nice, open place; that was the widest spot there was in the whole place. I thought I could get over there. I could not see anything ahead over there from where I stood that was out of the way. I didn't calculate to go further than that. I thought I could get where I could unhitch. What I tried to do was to get over there to get to a place where I could stand and take care of my horses." This witness also says: "When I first started in the Narrows I could not see that the snow had slid from above into the traveled track. After I got into the Narrows, I saw where I was. I could see no more slides ahead of me but them two little slides. From the road I drove I could see ahead where my horses were going; if I hadn't, I would not have went in." He also says: "When I would approach one of those slides or piles in the highway, I could see it. It wasn't so thickly composed of hail, ice, and sleet that my wagon wheel did not make any indentation in it. The wheels sank down in it, so that I didn't slide down the first one. That was about two rods before the accident occurred."

The version of the immediate circumstances preceding the accident given by the defendant's witness Patrick Grady differs somewhat from the testimony which we have just quoted from the witness Smart. Patrick Grady testifies: "I was out in the road, and Mr. Smart came along behind me. Said I: 'Mr. Smart, you better hold up; there is snow-banks in the road.' He said: 'I can't turn around.' Well, of course the man couldn't turn around. I own that the man could not turn around. He went on, and I didn't say anything more to him. I told him, in reference to going on to unhitch his team, he couldn't go any further, and he said he couldn't turn around, and so he went on, and went over the bank, and rolled over the bank. I followed him. The boy was in the wagon. The boy was under the wagon, and I pulled him out and left the boots under the wagon,—grabbed him out of the snow-bank, and laid him down there." The witness further testifies: "Mr. Smart overtook me in a kind of a curve,—a crook in the road. He could not see me until he got to me. It was just entering the Narrows where the water comes down off of the rocks. It was not a third of the way through. He went over two snow-banks before he went on the big one. His wheels went through them. I believe he went three rods before he got to this big bank, after he went through the two smallest,—I believe he did. The wheels of his wagon cut through the snow until he got to the big bank. They were small snow-banks there. Mr. Smart stopped when I spoke to him. He could not turn around there. He was about the middle of the road, what road was there. It is a little bit of a road,—it was no road at all. He could not turn a wheelbarrow around there where I met him."

The learned counsel for the appellant is correct in his statement that the question of contributory negligence often becomes one of law, and that, when the facts are undisputed, and lead to one conclusion, and there are no conflicting inferences to be drawn, and that when persons of ordinary understanding will reach the same conclusion, the court may determine the question of negligence as one of law, as RUGER, C. J., says in *Wendell* v. *Railroad Co.*, 91 N. Y. 427: "If the facts all point to the single conclusion that the deceased

was negligent, the court is bound to nonsuit." However, as ALLEN, J., says in *Thurber* v. *Railroad Co.*, 60 N. Y. 331: "When the inferences to be drawn from the proof are not certain and incontrovertible it cannot be decided as a question of law by directing a verdict or nonsuit, but must be submitted to the jury. Negligence is a question of fact, and should usually be decided as such, especially whenever men of ordinary prudence and discretion might differ as to the character of the act, under the circumstances of the case, the position and condition of the parties."

And the learned counsel for the appellant is correct in saying that the burden is upon the plaintiff to establish his freedom from contributory negligence. "He must prove that the injuries resulted from the defendant's negligence, unmixed with any negligence on the part of plaintiff." *Powell* v. *Railroad Co.*, 15 N. E. Rep. 891; *Harder* v. *Railroad Co.*, 2 N. Y. Supp. 70. If Smart was negligent, as he was engaged in accomplishing business for the plaintiff, his negligence would be imputed to the plaintiff, and stand in the way of plaintiff's recovery. Shear. & R. Neg. (2d Ed.) §§ 40, 60; *Stroher* v. *Elting*, 97 N. Y. 102. It may be said upon the facts before us that an extremely cautious and highly prudent person, having a large degree of timidity, would never pass through the Narrows with a pair of horses and a wagon, and much less in the spring of the year, when there was snow upon the ground, or had been rain, sleet, and ice; but it is not helpful to the defendant's case to make such an affirmation. The plaintiff, or his servant, was only bound to exercise such care and caution as a person of ordinary prudence would exercise under the circumstances. *Evans* v. *City of Utica*, 69 N. Y. 166.

In *Bullock* v. *Mayor, etc.*, 99 N. Y. 654, 2 N. E. Rep. 1, it was held that a party had a right to use a sidewalk, although she knew the same was in a defective condition; and in that case it was further said, viz.: "Whether she was guilty of any carelessness which contributed to the accident was also a question for the jury."

In *Bernhardt* v. *Railroad Co.*, 23 How. Pr. 166, it appeared that the injuries received by the deceased which were the subject of the action came upon him while he was attempting to rescue his hat, which had blown upon the track, and he was struck by an engine. The question arose on a motion for a nonsuit, and in considering that motion Judge SELDEN remarked: "Can it be said, then, in view of these obvious considerations, that the court was bound to hold the deceased guilty, as a conclusion of law, of a want of ordinary care, without even submitting the question to the jury? I think not. The deceased must have supposed that he had time to seize his hat, and get off of the track before the engine would reach him. The result shows that in this he erred; but the proof is not specific and clear as to the elements of time and space upon which his judgment was based.. For the court, therefore, to hold that his mistake was inexcusable, would be to establish the principle that, in every such case, error in judgment is, *per se*, culpable negligence. This, I think, would hardly do. Whether, in such a case, the error was excusable or not, can only be settled by a jury, in view of all the circumstances of the case so far as they are disclosed, and especially when, as in the present instance, the deficiencies in the proof leave the case open to many uncertain inferences." The judge was right in submitting this case, so far as the point under consideration is concerned, to the jury. Smart found himself in front of a drift; his horses uneasy; no opportunity to turn them around; unable to unhitch them and lead them back. He knew that the two preceding drifts had yielded to the force of his wagon. He supposed that the one in front of him would likewise yield to the force of the wagon, and let the wheels in, and enable him to pass to a place of safety where he could manage his team. He misjudged. He was mistaken, as was the intestate when he supposed that he could rescue his hat before the engine would reach him, in the case just cited.

In *Larkin* v. *O'Neill*, 48 Hun, 591, 1 N. Y. Supp. 232, where the question of the plaintiff's contributory negligence was under consideration in regard to descending a pair of stairs from the upper to the lower department, Judge DANIELS says: "The fact that the effort to do so would be attended with some danger would not of itself charge her with such want of care as would prevent her from maintaining the action. The case would still be subject to the inquiry whether the act of attempting to pass down the stairs was or was not careless or negligent, and that, upon the facts appearing, it was for the jury to determine."

In *Wells* v. *Village of Herman*, 4 N. Y. St. Rep. 773, it was said: "If there be any evidence from which a jury might find proper care, it is for them to pass on the question. And proper care may be said to be such care as an ordinarily prudent man would exercise in like circumstances. Hence to judge what an ordinarily prudent man would do is generally a matter for the jury. It can seldom be laid down with safety, as a matter of law, that an ordinarily prudent man would not have done such and such acts. * * * Of course he [the plaintiff] was justified in walking along the sidewalk, although its slippery condition made it dangerous." And in *Pomfrey* v. *Village of Saratoga Springs*, 104 N. Y. 459, 11 N. E. Rep. 43, it was said, whether plaintiff was guilty of negligence in seeking to pass over the obstruction, even when she saw it, was a question of fact for the jury, depending upon the nature of the obstruction and all the surrounding circumstances. And in *Remer* v. *Railroad Co.*, 1 N. Y. Supp. 124, it was said: "'If the deceased did all he could be properly asked to do to escape the peril in which he was suddenly placed, the jury may find no contributory negligence on his part.' And further, the deceased was placed in a sudden and perilous exigency, and the question is not whether he did the wisest thing possible under the circumstances, but whether he exercised ordinary care and prudence." And in *Nash* v. *Railroad Co.*, 14 N. Y. St. Rep. 532, the court said: "Where the case involves the conduct of an individual under such facts and circumstances as that honest men might differ as to the inference to be drawn, whether the conduct was negligent or not, then it is a matter proper to be submitted to the determination of the jury."

In the case of *Campbell* v. *Railroad Co.*, 3 N. Y. Supp. 694, lately decided in this court, it was said: "Contributory negligence is a question of fact, and should be left to the jury, unless it so clearly appears from the circumstances or uncontradicted evidence as to leave no inference of fact in doubt."

The learned counsel for the appellant has called our attention to several cases where the visible defect or obvious obstruction were known by the party injured, and he experimented with the dangerous condition caused thereby, and took chances in passing over or surmounting the same, and received injuries while doing so. In *Belton* v. *Baxter*, 54 N. Y. 246, the plaintiff wanted to cross Second avenue on Fourth street, where he resided. "He hurried on a little, and made his 'calculation' that he could cross in front of the car, 'before the cart could get up.' It is thus evident that the plaintiff expected the cart to attempt to pass the car, as it did, and his calculations were accordingly made. He stepped on. The car came faster than usual. He just passed the heads of the horses attached to the car, and at that moment came in contact with the horse and cart of the defendants, or some of its appendages, and received the injury." The case differs from the one before us. Here, Smart, according to his testimony, did not perceive the difficulties that were in front of him until it was too late to call a halt and retrace his steps.

In the case of *Durkin* v. *City of Troy*, 61 Barb. 437, there was an obstruction on the sidewalk, and PARKER, J., said that the negligence of the plaintiff consisted in "voluntarily and unnecessarily venturing upon the dangerous obstruction, however carefully he might attempt to carry himself upon it." We think that case does not aid the appellant.

In *Cummins* v. *City of Syracuse*, 100 N. Y. 637, 3 N. E. Rep. 680, it is said: "There was no need of any such mistake. No urgency or need impelled him to trust in an unknown locality, near a bridge, to the uncertain guidance of such imperfect light as was alone possible in the thick darkness." The case differs from the one before us.

Smart testifies, viz.: "When I first started in the Narrows I could not see that the snow had slid from above into the traveled track. After I got into the narrows I saw where I was. I could see no more slides ahead of me but them two little slides. From the road I drove I could see ahead where my horses were going; if I hadn't I would not have went in." In the case of *Phillips* v. *Ritchie Co.*, 7 S. E. Rep. 427, (Ct. App. W. Va.,) the plaintiffs were passing over a public road, and there had been a land-slide consisting of dirt and rock, which had come from the bank above into and across the road to within about 2 feet of the lower edge. The land-slide was 10 or 12 feet wide, and about 4 feet deep, with a gradual descent to the lower edge. The buggy, in passing over a rock about 6 inches high near the middle of the land-slide, suddenly pitched forward, and the horse was frightened and ran away: and the court, in commenting upon the evidence in the case, observes, viz.: "The testimony of the plaintiffs shows that they regarded this obstruction, consisting of rocks and dirt, as dangerous. It was not only open and visible, but the plaintiffs knew its exact condition; and, notwithstanding these facts, they heedlessly and recklessly ran upon it. And what was still more reckless and inexcusable, neither of them got out of the buggy, or took any precaution to avoid any accident or injury; but, in the face of almost unavoidable danger, they all remained in the buggy, and drove the horses and buggy over the obstruction. No sensible or reasonable person could have expected to escape injury in doing such an act. * * * They took an unreasonable and dangerous risk, and, having sustained injury thereby, they cannot escape responsibility by showing the defective condition of the road." The case is unlike the one before us. Nor does *Merrill* v. *North Yarmouth*, 78 Me. 200, 3 Atl. Rep. 575, aid the appellant, as the dangerous condition of the road upon which the plaintiff's intestate attempted to pass with a horse and pung was open, visible, and led the court to say that the intestate "knowingly and unnecessarily exposed himself to the perils before him."

We are of the opinion that the learned trial judge properly denied the motions for a nonsuit, and that he properly remarked to the jury: "You are to say whether he acted like a prudent, careful man, as you think an ordinarily prudent man would have acted under those circumstances, and with that information, or not. His excuse for not stopping—for going on—is that he could not turn around there; that he could not even unhitch his horses and take them back by the side of his wagon; that the road was too narrow. It does not appear that there was any difficulty in unhitching his horses and taking them forward over this snow-drift, this ice, this obstruction; but it is for you to say whether he either ought to have stood still where he was, holding his horses, until this drift of snow and ice and embankment should be removed to such an extent that it was safe and prudent to go over it, or whether he should have taken off his horses and led them forward over it and tied them until it could be removed; whether those were things that an ordinarily prudent person ought to have done under those circumstances, and that he was guilty of imprudence and contributory negligence in not doing it; or whether it appears to you, looking at all the facts and circumstances, that he was justified, as a prudent man, in taking the risk in the face of Patrick's advice, and in the face of what he saw, in undertaking to drive his horses and wagon over the snow-bank that he saw before him, and where the consequences were of so serious a character."

Inasmuch as the question of fact was fairly, carefully, and properly submitted to the jury, the defendant must abide the verdict. In *Maxim* v. *Town of*

*Champion*, 4 N. Y. Supp. 515, we had occasion to construe the statute of 1880, relating to the liability of the town for the negligence of its officers. Judgment affirmed, with costs.

MARTIN, J., and MERWIN, J., concur.