MICHAEL CUMMINS, Respondent, *v.* THE CITY OF SYRACUSE, Appellant.

(Argued October 30, 1885 ; decided December 8, 1885.)

THIS action was brought to recover damages for injuries alleged to have been sustained through defendant's negligence.

Plaintiff, who resided at Rochester, went to Syracuse, where he arrived at midnight, and went with several others, among them a brakeman, who carried a lantern, to a saloon on West Fayette street in said city; said street crosses Onondaga creek by a bridge, which the party crossed in going to the house ; on the street north of West Fayette street, and directly north of the bridge is the depot of the New York Central railroad.   The saloon was on the south side of West Fayette street, on the west bank of the creek adjacent to the bridge.   Between the building on the opposite side of the street and the railings on the north side of the bridge was an open space of about one foot unprotected by a guard or railing.   The night was dark and the street lights were out when plaintiff left the saloon to return to the depot.  He saw the light from the depot reflected on the waters of the creek.  He crossed the street in the direction of the light and fell through the open space into the creek, about sixteen feet below, and was injured.

The further material facts appear in the *mem.* of opinion, which is given in full:

"The absence of a guard rail between the angle of the bridge truss and the corner of the adjacent building left an unprotected opening, through which the plaintiff fell and was injured.

"The circumstance was such as to permit an inference of negligence on the part of the city to be drawn by a jury. The more difficult inquiry is, whether any reasonable view of the admitted facts warrants an inference that the plaintiff was himself free from negligence contributing to the injury. Dismissing all consideration of the equivocal character of the injured man, and of the questionable purpose of his wanderings in the night, as immaterial to the injury, we still have the facts that he was a stranger in the city, knowing nothing of the locality, crossing a bridge of which he was conscious just before entering the house from which he last emerged, having with him, as a guide and companion, the brakeman, Sullivan, who did know the locality and carried with him a train lantern, but, on leaving the house in a night of extreme darkness, undertaking to find his own way without the immediate aid of Sullivan's knowledge or his light, and so, misled by a reflection on the water, crossing the street, and walking through the unguarded opening. On the face of it this conduct seems negligent. It is forcibly urged, that, while he had a right to assume the streets to be safe for the purpose of travel, he had no right to assume that accident was impossible, or the city an insurer of his safety. The means of protection were at hand; ordinary prudence required their use and might have prevented the accident. The known existence and proximity of the bridge, an entire ignorance of the locality, and the extreme darkness of the night, all demanded of plaintiff an exercise of such reasonable care and caution as the circumstances placed within his power. If he had found himself upon the street without light or guide, and a stranger to the locality, it would have been easy to infer that he moved with all the care and caution reasonably within his power. But if, having a light, he had extinguished it and taken the risk of the darkness, or having a guide, had dismissed him without adequate necessity or reason, and so had

walked through the gap, the inference of carelessness would have been irresistible. In this case the plaintiff voluntarily dispensed, for the moment, both with a guide and a light, and ignorantly traveled off into the darkness. Such conduct was imprudent unless other circumstances so excused or explained it as to make possible an inference of reasonable care; and it is upon those circumstances, if at all, that a question of fact can arise. It is said plaintiff was in a hurry, and the guide and the light delayed and lingered behind. Nothing hurried him. The party were on their way back to the freight train, and to a lodging in the caboose. For this the plaintiff was indebted to the brakeman, and could reach the result only in his company and through his assistance. Nothing was gained by preceding him, and nothing lost by waiting for him to lead the way. But it is much more forcibly suggested that the plaintiff was misled by Sullivan's failure to warn him that he was going wrong. The proof is that while the brakeman tarried, and the plaintiff moved on across the street, the former called out 'Mike, where are you going?' to which plaintiff answered, 'I am going across this way; come on.' The fact that Sullivan made no reply, and uttered no further warning, is relied upon as furnishing to plaintiff an assurance that he was not going wrong. And this fact put in connection with the further fact that the creek made an opening leading directly to the light at the depot which was reflected upon the water and induced plaintiff's belief that an open street was before him running directly to the station furnish the final explanation offered. It does not rebut the inference of negligent conduct. The call of Sullivan was almost, if not quite, a warning. The sound of his voice drew attention to the fact that he was lingering behind, and what he said indicated that plaintiff was not going in the expected direction and to the train. It called his attention to his wandering, and prudence required that he should wait the few moments necessary, till a guide and a light would insure safety and indicate the proper direction. And the fact that he knew his proximity to a bridge and of course to an opening which it spanned made his duty all the more imperative. Instead of that he disregards the warning; answers, 'I am go-

ing across this way; come on'; and plunges blindly forward into the darkness. It is true that he thought he was travelling an open street and was misled by the reflection of the station light on the water; but there was no need of any such mistake; no urgency or need impelled him to trust in an unknown locality, near a bridge, to the uncertain guidance of such imperfect sight as was alone possible in the thick darkness. That is the trouble with the explanation. It does not excuse neglect to employ the light and the guide, ready at hand and costing only a few moments of harmless delay, which would have guarded against the deception of the open creek, and prevented the accident. We do not think the facts admit of any reasonable inference consistent with the absence of contributory negligence.

" The judgment should be reversed, and a new trial granted, costs to abide the event."

*Louis Marshall* for appellant.

*George Raines* for respondent.

*Per Curiam* opinion for reversal and new trial.

All concur, except DANFORTH, J., dissenting, and FINCH, J., not voting.

Judgment reversed.