PER CURIAM.   We think it was error to admit the evidence of Alice Higley, of the conversations between her and the defendant in 1889.

2.  Also in admitting the evidence of physicians who made an examination of Zada Young in 1890, and who gave evidence tending to indicate that upon such examination they found a broken hymen.

3.  We think in the cross-examination of Sarah Betsinger, wife of defendant, improper questions were allowed to be put to her, touching the declarations alleged to have been made by her to Mrs. Richards.   The conviction, judgment, and order must therefore be reversed.

Conviction, judgment, and order reversed, and a new trial ordered, and the clerk of Onondaga county directed to enter judgment and remit certified copy thereof, with the return and decision of this court, to the court of sessions of Onondaga county, pursuant to sections 547 and 548 of the Code of Criminal Procedure.

---

## SHERMAN v. VILLAGE OF ONEONTA.

(Supreme Court, General Term, Fourth Department.   November, 1892.)

1. DEFECTIVE STREET—PLEADING—DESCRIPTION OF DEFECT.
   In an action against a village for personal injuries sustained while driving along a street, an allegation in the complaint that a deep, dangerous trench or ditch was excavated in and across the traveled part of the street, and was suffered to remain in an open and exposed condition, is a sufficiently specific description of the defect, in the absence of a motion by defendant to have the complaint made more definite and certain, or that a bill of particulars be rendered.

2. SAME—PLEADING AND PROOF—VARIANCE.
   Under such an allegation, evidence is admissible that a ditch or trench dug in the street by a water company for the purpose of laying its pipes had been left two feet below the regular grade of the street, and that a ridge of earth about two feet above the regular grade had been left along either side of such trench; and such evidence is not objectionable as proving a mound to have been the cause of the injury, while the complaint alleged the existence of an unguarded embankment.

3. SAME—EXCAVATION BY STRANGERS—KNOWLEDGE OF DEFECT.
   A village whose charter vests it with exclusive control over its streets, and requires associations or persons digging up such streets to restore them to as good condition as they were before the work was done, cannot defend an action for personal injuries sustained by a defect in one of its streets on the ground that the defect was caused by an excavation by a water company, which was not its officer or agent, where sufficient time has elapsed between the date of such excavation and the happening of the accident to charge the village with notice of the defect.

4. SAME—EVIDENCE—REPAIRS AFTER ACCIDENT.
   A witness who has testified as to the distance from the top of the ridge to the bottom of the trench, as it existed at the time of the accident, may also testify as to a change on the grounds since that time, to show on what his estimate as to the depth was based; the court expressly cautioning the jury not to infer negligence from such change.

5. SAME.
   After a witness for plaintiff had testified that he was present at the scene of the accident shortly after it happened, the court ruled that he might be-

questioned as to what he did there, for the purpose of showing whether he was competent to estimate the height of the ridge; and he answered that he was employed to haul away the dirt. An objection was then sustained to a question as to the number of loads that had been drawn away, and his evidence was stricken out. Subsequently the court permitted him to testify as to the height and width of the ridge. *Held* not error prejudicial to defendant.

**6. SAME—EVIDENCE—CONDITION OF STREET.**
After a witness who had driven over the place in question many times has described the condition of the roadbed at the time of the accident, it is not error to permit him to testify that in driving along there a person would first come down into the trench, and then rise up over the ridge, and that he himself had been thrown from his seat in driving along there at a moderate gait, since such evidence shows the condition of the street.

**7. SAME.**
Evidence by a witness that he had always driven around the place in question after having made one attempt to cross it is admissible as showing the condition of the street.

**8. SAME—DAMAGES—CONDITION OF PLAINTIFF'S HEALTH.**
Evidence by plaintiff's mother, as to her observations as to the condition of plaintiff's health before the accident, is admissible.

**9. SAME—NOTICE OF CLAIM.**
A provision in a village charter that no account or claim against said village shall be audited or allowed unless verified by the oath of the claimant as is required in the case of town accounts, and that all claims for damages shall in the first instance be presented to the board of trustees, verified under oath in like manner, does not apply to an action ex delicto.

**10. SAME—RIGHT OF TRAVELER—PRESUMPTION AS TO SAFETY OF STREET.**
A traveler on a village street has the right to assume that all parts of a street intended for travel are reasonably safe, and the village is bound to use reasonable diligence and care to accomplish that end.

Appeal from circuit court, Otsego county.

Action by Jennie R. Sherman against the village of Oneonta for personal injuries sustained by reason of a defective street. There was a verdict of $1,500 in plaintiff's favor, and defendant's motion for a new trial, made on a case and exceptions, was denied. From the judgment entered on the verdict, and from the order denying the motion for a new trial, defendant appeals. Affirmed.

Plaintiff in her complaint alleges:

"That on or about the 23d day of April, 1886, a deep, dangerous trench, hole, or ditch was excavated in and across Center street, and across the traveled part of said street, and in such a manner as to render it impossible for persons using or traveling on said street in carriages or other vehicles to pass along without crossing over or into said ditch, trench, or excavation, and said ditch, trench, or excavation was suffered by the defendant, during the day and night of the said 23d day of April, to remain open, exposed, and in an unsafe and dangerous condition, and so suffered it to remain in said improper and unsafe condition for a long time prior to said day; and the defendant had full knowledge of the fact that said street was in a dangerous and unsafe condition, which said ditch or trench was opposite or nearly opposite the premises of W. A. Lakin, in said village, and at a point where Elm street intersects and crosses said Center street."

The complaint also alleges that the plaintiff on the day aforesaid was traveling in said street in a carriage and vehicle, and was wholly unaware of the dangerous and unsafe condition of said street, and while passing along the same in a prudent and proper manner, and without fault on her part. by means of the unsafe, dangerous, and improper condition of said street, was precipitated and violently thrown from the carriage in which she was riding, and dangerously and permanently injured, specifying the injuries in detail. A former verdict was had in the case, of $4,000, and an appeal was taken from the judgment entered thereon, and was heard by us, and a new trial granted, upon the ground that improper evidence was received; the trial court having admitted "evidence of decla-

rations of defendant's street commissioner to a workman a few days after the accident that there was a high mound there, and that it must be picked off and cleaned up before somebody else got hurt." See 12 N. Y. Supp. 950.

Argued before HARDIN, P. J., and MARTIN and MERWIN, JJ.

Burr Mattice, for appellant.

F. R. Gilbert, for respondent.

HARDIN, P. J. Criticism is made by the learned counsel for the appellant of the complaint; and it is claimed that the complaint "alleged the existence of an unguarded excavation, and attempted to prove a mound, as the cause of the injury." The injury sustained by the plaintiff occurred while she was riding in a carriage westerly along Center street, and the evidence discloses that, at a point where the intersection of that street with Elm street occurs, there was a gutter which crossed Center street on the easterly line of Elm street, and on the westerly side of this gutter there was, according to the evidence of some of the witnesses, a ridge or elevation of the surface of the street, which had been left there since the preceding fall, when the ditch or trench was made for the purpose of laying the water pipe. Numerous witnesses were called by the plaintiff to describe the condition of the street at the time of the injuries, the depth of the same, the length of the same, and the extent of the earth on either side rising above the regular grade of the street. Some of the witnesses state the depth of the ditch or trench to have been in the neighborhood of 23 inches; and, in giving the details of the circumstances pertaining to the ditch, they specify a ridge or elevation of earth which seems to have been left after the placing of the water pipe through the street. On the other hand, defendant calls numerous witnesses who testify that the depth is not so great as specified by the witnesses of the plaintiff, and that the elevation or ridge is not so great as specified by plaintiff's witnesses. If the defendant desired the complaint to contain a more accurate, definite, and minute description of the place where the injuries were received, it should have sought its remedy by a motion to have the complaint made more definite and certain, or that a bill of particulars be rendered. The defendant was not misled by the language of the complaint.

The evidence that was received in respect to the location where the injuries took place was admissible. There is no available force in the criticism made of the complaint. Whether the street where the injuries were received was in a dangerous, unsafe, improper, and unsuitable condition was made a question of fact, upon which either side gave very extensive evidence; and after a careful perusal of all that evidence the conclusion is reached that it was proper to submit the question to the jury to say whether the defendant had been guilty of negligence in leaving the street in the condition in which it was at the point and time of the injuries. Apparently the evidence discloses that the street had remained in the condition in which it was found on the occasion of the accident from the fall of 1885. The defendant either had actual notice of its condition, or was negligent in not obtaining notice of its condition. The length of time was sufficient to warrant an inference that it had knowl-

edge of the unsafe condition of the ·street.   Ryan v. Mayor, etc., 13 N. Y. St. Rep. 550.

Defendant's corporate existence is derived from chapter 30 of the Laws of 1885.   In the second section of that act it is provided as follows:

"The said village is hereby declared to be a separate highway district, under the exclusive care and jurisdiction of the board of trustees, who shall have all the powers conferred upon commissioners of highways in towns within this state."

The charter confers other powers and duties upon the trustees of the village, and in the twenty-sixth section it is provided that the trustees "shall have the exclusive control and management of * * * the roads, streets, avenues, alleys, and public places of the village * * *." And in section 42 of the charter it is provided:

"No water company, gas company, person, or association of persons, shall be allowed to dig up any street, highway, avenue, lane, or public place for the purpose of laying pipes or any other purpose, and leave the same in an unsafe manner, or without guards and lights, during the nighttime, and all such work or jobs shall be done with reasonable dispatch.  All public places so dug up shall, by the respective parties doing or causing the same to be done, be fully restored by them to as good condition as before such work had been done."

In this case it is no defense to the defendant to say that the excavation or the ridge or trench, or parts thereof, were caused or created and left in a dangerous condition, in the fall of 1885, by a water company. Pettengill v. City of Yonkers, 116 N. Y. 558, 22 N. E. Rep. 1095; Horey v. Village of Haverstraw, 47 Hun, 356.   If such condition was produced by the water company, it became the duty of the trustees either to cause the place so dug up to be fully restored by the water company, so as to be in as good condition as before such work had been done, or to make the restoration, amendments, and repairs necessary to be done in order to cause its streets to be in a reasonably safe condition for the use of the public.   In Behberg v. Mayor, etc., 91 N. Y. 142, it was said:

"Where the defect or obstruction which has caused the injury was created or placed therein by the unlawful and unauthorized act of persons not officers of the city, the duty of the city to repair the defect or remove the obstruction only arises after actual notice of its existence, or after such a lapse of time as would justify the imputation of negligence, if the defect or obstruction had not been discovered; and what is such reasonable time is a question for the jury."

In McGuire v. Spence, 91 N. Y. 303; it was held:

"One passing along a sidewalk has a right to presume it to be safe.· He is bound to no special care, and cannot be charged with negligence for not being on his guard against an unlawful obstruction, or for not looking for it, although it is visible."

In Pomfrey v. Village of Saratoga, 104 N. Y. 459, 11 N. E. Rep. 43, it was held, viz.:

"Where, by the charter of a municipal corporation, the duty is imposed upon it of keeping its streets and sidewalks in a reasonably safe and proper condition for public use, for a neglect to perform this duty it is liable to damages to persons who, because thereof, without fault on their part, receive injuries."

And in speaking of the duty of the trustees in a case like the one before us, the court observed:

"But they owe to the public the duty of active vigilance; and when a street or sidewalk has been out of repair for any considerable length of time, so that by reasonable diligence they could have notice of the defect, such notice may be imputed to them."

Again the court reasserted the principle applicable to the case before us in Turner v. City of Newburgh, 109 N. Y. 301, 16 N. E. Rep. 344, in which case it was held:

"Municipal governments owe to the public the absolute duty of putting and maintaining the public highways which are in their care, or under their management, in a good, safe, and secure condition; and any default in this respect, if occurring through negligence of the officials upon whom the duty is devolved, renders the municipality liable. Where the unsafe condition is caused by some other than municipal agency or instrumentality, negligence is not imputable until a sufficient time has elapsed to charge the municipal officials with notice."

We think the evidence in this case warranted the jury in finding that the defendant had notice of the defective, unsuitable, and dangerous condition of the street in question, and that that question, as a question of fact, was properly submitted to the jury; and it must be assumed that it was found that from the fall of 1885 until the 23d of April, 1886, the street was in an unsafe and dangerous condition, upon evidence sufficient to warrant a verdict to that effect. The defendant was chargeable, upon the evidence, with notice of the defective or dangerous condition of the street. Pettengill v. City of Yonkers, supra. Although the defendant gave considerable evidence tending to contradict the testimony offered by the plaintiff in regard to the condition of the street, yet, under the rule applicable to cases where there is a conflict in the evidence, we should not disturb the verdict. Goff v. Village of Little Falls, (Sup.) 20 N. Y. Supp. 175, and cases cited in the opinion of Martin, J.; Beckwith v. Central Road, 64 Barb. 299; Teeter v. Teeter, (Sup.) 20 N. Y. Supp. 259; Scott v. Railroad Co., 13 N. Y. St. Rep. 551.

2. We are of the opinion that upon all the evidence the question whether the plaintiff was guilty of contributory negligence was for the jury. The plaintiff had a right to assume that all parts of the street intended for travel were reasonably safe, as the defendant was under an absolute duty to keep its streets in a reasonably safe condition for public travel, and was bound to exercise reasonable diligence and care to accomplish that end. Brusso v. City of Buffalo, 90 N. Y. 679; Pomfrey v. Village of Saratoga, supra. We are of the opinion that the trial court properly refused to take from the jury the question whether the plaintiff was free from contributory negligence, and also properly refused to set aside the verdict upon that ground. The authorities cited in the opinion of Martin, J., in Goff v. Village of Little Falls, supra, on a similar question, are applicable here.

3. Plaintiff called Swift as a witness, who was on Center street at the time the accident occurred, and who saw the wagon in which plaintiff was riding, and heard something snap as it passed into the depression in Center street, and who described the condition of the street at the time of the accident. During his cross-examination he stated: "According to my best recollection and judgment, on that day the distance to the bottom of the water ditch, I should think, was four feet. It is my judgment and recollection that from the bottom of the gutter to the cov-

ering of the water pipe,—that is, the main water pipe,—it was twelve feet." During his re-examination the witness stated that he had "made measurements with Mr. George I. Wilber. I referred to the measurements that were made by myself and Mr. Wilber. The answer that I gave upon my cross-examination with reference to the distance was based on recollections to my opinion as to where the dirt was. I make an estimate now of where it was then. I should think that this mound was at the top of the slope as you come within the water gutter,—right at the top of it." Subsequently, in the course of his cross-examination, the witness stated: "My present recollection, without regard to any measurements,—independent of any measurements,—that it was four feet from the center of that depression to the covering of the water ditch; four feet each way." Thereupon the court observed: "All that he has said with reference to the measurement of the distance may be stricken out of the case. It should not be in the case. I mean all that he has said with reference to the measurements he has taken." Then the witness was permitted to explain what he meant with reference to the 12 feet. Although the question calling for that explanation was objected to, and the objection overruled, no exception was taken. In answer the witness stated: "I mean from the bottom of the center of the water ditch to the main pipe. I mean the water pipe. I meant it was 12 feet." Thereupon a question was propounded to the witness as follows: "Did you ascertain that from recent measurements, or from measurements at the time the accident occurred, or before?" This question was objected to. The objection was overruled, and an exception taken by the defendant. The answer of the witness was, "It was in regard to the measurements." The objection was again renewed by the defendant, and among other things it was stated in the objection that "any other measurement which he made since the transaction is improper." Thereupon the court remarked: "I hold that any measurement made since the transaction is improper; but he has got the right, on this examination, to find out what his estimate of 12 feet was based upon, nevertheless." The question was then read to the witness, and his answer was, "Recent measurements." Thereupon a question was propounded to the witness as follows: "Now, isn't it a fact that, between the time of the accident and the time the measurement upon which you base your answer of 12 feet was made, there has been a change made in these grounds?" This was objected to by defendant's counsel, and the court replied: "I am going to admit this evidence, not for the purpose of showing any change in the ground or location, from which any inference of negligence can be drawn, but merely for the purpose of explaining with reference to this measurement,—it is 12 feet,—and how he got it. That is your only object of it. What is your answer, Mr. Swift? You have asked him on the defense with regard to it, and shown affirmatively that it was 12 feet." Thereupon the defendant's counsel took an exception, and the witness answered, "I think there has been some change." We think, after the defendant had called out the circumstance relating to the measurement made by the witness, that no error was committed in allowing the witness to state, "There has been some change."

4. Dr. Simmons was called as a witness for the plaintiff, who saw the accident, and was standing on Center street, and who went to the scene of the accident. He says that he "observed this place before that time. I had known the place all the winter,—all the year. * * * I think I had driven through there that week. The condition of the road from the fall before down to the time of the accident was substantially the same." Thereupon the following question was propounded to the witness: "From your present recollection of the street prior to the accident, what was its condition at that point?" This was objected to by the defendant on numerous grounds. The objections were overruled, and the defendant took an exception. The court modified the question as follows: "Just describe it,—don't give any conclusion as to the condition of it,—so the jury can see what there was of it." The witness then described the condition, and stated, viz.: "There was a gradual slope down it for the water course to run down through there, and a gradual rise up out of that, and then there was a mound of dirt, a bank of dirt, or something there, almost as soon as you get out of the slope,—very close. I should think this bank of earth was about eight inches high. I should think the ditch or depression was seven or eight inches deep." Thereupon the following question was propounded to the witness: "What portion of the roadbed did you use or drive over?" This was objected to, and the objection was overruled and an exception was taken. Subsequently the witness was allowed to describe the manner in which he passed over there, against the objection and exception of the defendant, and his answer was, viz.: "In coming along through there, you would come down in this water course, and just as you nicely got out you would rise up over this bank; and, unless your horse was going slow, it would give you a sudden lurch in your wagon. I have been thrown from my seat in passing over there just at that place, driving at a moderate gait." After some extended colloquy between the court and the counsel in respect to the witness' evidence, the court observed: "It is received for no other purpose than showing the condition of the street at that place." To that ruling the defendant took an exception. We think the exception presents no error.

5. The mother of the plaintiff was recalled, and gave evidence as to the general health of the plaintiff prior to the injury, and the defendant took an exception, and the court observed, "She may state whether she was in good health," and to that ruling the defendant's counsel took an exception. Thereupon the court remarked, "That is, she may state the condition of her health as she observed it; whatever she observed;" and the witness proceeded to answer. We think the exception presents no error.

6. The plaintiff called one Williams as a witness, who testified that his attention had been called to the condition of Center street at the point where this accident occurred prior to the 23d day of April, 1886, and the witness added: "I drove on to the spot,—the ditch, as they call it,—and drove over the mound, like. I saw the wagon there after it was broken down." Thereupon the court observed, "Your next attention?" The witness replied, "I always drove around after I made one attempt

to cross it." Thereupon the defendant's counsel asked to have it stricken out. The court observed, "I think it may stand in the case, for the purpose of showing the condition of the road at that place." Defendant's counsel took an exception. We think no error was committed by the ruling.

7. The plaintiff called Orlando Brummaghen, who testified that, about the last of April or the forepart of May, he was at the scene of the accident, and that he observed its condition, but did not make any measurements there,—only looked it over,—against the exception of the defendant. The court said, "He may state whether he examined sufficiently careful to give an estimate of the height;" and the witness answered: "No; not to really estimate, not knowing. I just merely looked it over. I can't say as I paid any attention to this mound." The witness was asked, "While you was there, did you give it any particular attention, or what did you do with it?" This was objected to, and the court observed, "He may state what he did." Thereupon the counsel for the defendant objected that it was incompetent and improper, and "what he did there, unless it was to measure the altitude and height, would not be competent, in any circumstances." Thereupon the court observed, "I rule and hold that he may state here what he did, for the purpose of seeing whether he is competent to make an estimation of that measurement." Thereupon the defendant's counsel took an exception, and the witness answered: "We took off the dirt. I shoveled up the dirt into a wagon, and drawed it away." Thereupon the witness was asked, "How many loads of dirt did you draw off?" This was objected to, and thereupon the court said, "The evidence is stricken out as incompetent and immaterial, and anything as to what he did is stricken out." Following that was a further objection, and the court replied: "If he can give an estimate or approximate estimate of the amount of dirt which formed what is known as an elevation or mound, which extended across the street at the place where that accident occurred, he may give that estimate at or about the time before any change was made." The defendant took an exception. The court limited the answer to "the place of the accident." The witness answered: "I think there was between two and three loads. This mound, with reference to the cross walk or with reference to the water ditch, was on the west side, as near as I can recollect it; was about four feet from the cross walk. At that time it might have been two feet wide on top. I wouldn't think it spread out,—covered on the road. The surface at the bottom was three feet. It might have been about a foot deep, from the top of the mound down to where I say it is three feet across. I should think that it was my judgment that it was a foot. I don't know how much lower the bottom of the ditch was, along where this mound was, than the face or top of the road,—the regular bed of the road where the mound rested." We think these rulings and exceptions present no prejudicial error.

8. Defendant in his amended answer set up that the "claim or cause of action set forth in the amended complaint herein has never been presented to the board of trustees of said defendant, verified under oath, as is

required in the case of town accounts." Plaintiff produced evidence to the effect that in August, 1886, a claim was made up, stating the injuries she had received, with an affidavit of hers attached thereto, to the effect "that the foregoing statement and demand is true, of her own knowledge, except the matters herein stated to be alleged on information and belief, and as to those matters she believes it to be true," which was served upon the president of the village in August by leaving the same with him, and that the same was never returned. The plaintiff called Kirkland, who was in August, 1886, president of the village, and he testified that, after the paper known as the claim was handed to him, he gave it to the village attorney or counsel, and he testified that he had no knowledge of its ever being returned to the plaintiff, or any one in her behalf. And he adds: "I think, possibly, I called the attention of the trustees in the store. I think I did, perhaps." In chapter 30 of the Laws of 1885, being the charter of the defendant, is found section 58, which reads as follows: "No account or claim against said village shall be audited or allowed unless verified by the oath of the claimant or his legal representative, as is required in the case of town accounts. All claims for damages against the village shall in the first instance be presented to the board of trustees, verified under oath, in like manner." We think the section in question does not apply to an action for negligence or an action ex delicto. Quinlan v. City of Utica, 11 Hun, 217, affirmed 74 N. Y. 603; McClure v. Supervisors, 4 Abb. Pr. (N. S.) 202; Cavan v. City of Brooklyn, 119 N. Y. 156, 23 N. E. Rep. 741; Harrigan v. City of Brooklyn, Id.

The foregoing views lead to the conclusion that the verdict should stand. Judgment and order affirmed, with costs. All concur.