CHARLES C. CLEVELAND, Plaintiff, *v*. THE TOWN OF PITTSFORD, Defendant.

*Highway — negligence in driving upon an untraveled portion — encroaching fence.*

The public authorities are not obliged to prepare the entire width of a country highway for the public use.

A portion of a country highway, between the turnings of two traveled tracks of a road approaching it, was permitted to remain unprepared for public use, elevated about two feet above and sloping down to the traveled tracks, and was untraveled. A person who was familiar with this condition of the road, drove a sleigh with a top-heavy load, upon this elevation, when it was covered with unbroken snow; his sleigh overturned and he was injured, and he thereupon brought an action against the town to which the highway belonged, to recover damages, on the ground that his injury was caused by the defective condition of the highway.

*Held,* that the facts established contributory negligence on the part of the plaintiff, justifying a nonsuit.

The plaintiff claimed that the traveled track had been encroached upon by a fence post, and that thereby the turn into the intersecting road had been made more difficult.

*Held,* without discussing the question of the right of the highway commissioner to give the adjacent owner permission to build the fence, that the existence of the fence did not justify the plaintiff in knowingly driving over a place where he was almost certain to upset his load.

MOTION by the plaintiff, Charles C. Cleveland, for a new trial, upon exceptions ordered to be heard at the General Term in the first instance, after a nonsuit at the Monroe Circuit, on the 11th day of January, 1893.

*George F. Slocum,* for the plaintiff.

*George F. Yeoman,* for the defendant.

LEWIS, J. :

This action was brought to recover damages alleged to have been sustained by the plaintiff, by being overturned in the highway in consequence of its defective condition, in the town of Pittsford, Monroe county.

There is in the town a country highway running southerly from the village of Cartersville, and is known as East street or Cartersville road. Intersecting this road at a point south of Cartersville is a highway running easterly and nearly at right angles to the Cartersville road, to what is known as Richardson's Mill. The latter highway is known as Mill street.

There is quite an ascent in the road as you leave Mill street to go upon East street. The traveled roadway on Mill street separates into two tracks as it enters East street, one turning to the north and the other to the south.

Between these two tracks, at the junction of the two streets, is a portion of the highway, the surface of which is some two feet or more higher than the northerly track.

The higher portion of the highway had never been used for traveling, the vehicles, as stated, passing upon one side or the other of it. The surface of this elevated place descends northerly and southerly towards the tracks mentioned.

On the 21st day of January, 1892, the plaintiff was going from Cartersville southerly along East street, intending to pass down Mill street to Richardson's Mill.

He had a team of horses drawing a load of 100 empty barrels, and in attempting to turn down into Mill street from East street his load was upset, and he was quite seriously injured, and he brought this action to recover for the damages he sustained, alleging that his injuries were caused by negligence on the part of the defendant in permitting the highway to be out of repair.

The trial court nonsuited the plaintiff, and directed plaintiff's exceptions to be heard at the General Term in the first instance.

The knoll between the two tracks referred to was, at the time of the accident, covered with snow of the depth of from eighteen to twenty-four inches, which was lying upon the ground as it had fallen, and had not been disturbed by anything passing over it.

The plaintiff was perfectly familiar with the highway.

He testified that he had been driving over it all of his lifetime; had known it from the time he was a boy, and he was at the time of the accident sixty-five years of age.

He knew this elevated portion of the road had never been used for driving over; that it had never been prepared for that purpose, and was not intended to be used for travel.

His barrel-rack was upon a pair of bob-sleighs; was twenty-one feet ten inches long, three feet and six inches wide where it rested upon the bobs, and eight feet four inches wide at the top of the rack.

Plaintiff testified that when he came to the turn in the road he drove his team on past the center of the road over the knoll between the two tracks, and attempted to draw his sleigh over this knoll between the two tracks, intending to go down straight into Mill street, and that as he drove his horses down the hill his load upset, falling towards the north.

Mr. Basset, a witness sworn for the plaintiff, who resided in a house at the head of Mill street, testified that he was standing at his window when the plaintiff drove up; that he stopped right in front of the witness' house with a load of barrels; that he then started up, made his turn for down Mill street, and as his forward bobs went over the knoll they pitched off sidewise and that raised his hind bobs and threw his load right over to the north.

He further testified that there were two beaten tracks, one coming from the north going down Mill street, the other from the south, and that in between these two roads there was a spot of ground where Mr. Cleveland attempted to turn that was all covered with snow, and no tracks or nothing to be seen there, even a man's foot was not through here.

The snow was from a foot and a half to two feet deep at that place; that there was a rise of about two feet and a half from the wagon track on the northerly side up to the level of the middle of the road where the plaintiff attempted to drive; that there was a little bit of a hill right there, and as the forward bob of the runner, or near runner, I would say, struck into that, that raised the hind bob and threw him right square over into the road.

The front bob dropped off there a little; that is just what carried him over.

It is apparent that the plaintiff was guilty of negligence contributing to his injuries.

He was familiar with the surroundings, he knew the uneven condition of the highway, and was aware of the ease with which his top-heavy load might be upset, and should have known that an attempt to drive over the place he did must almost inevitably result in overturning his load. He could as well have driven into a ditch upon the side of the road and expect his load to remain intact.

He complains of the uneven condition of the surface of the highway.

It is true it was in the highway, but the authorities had not, neither were they obliged to prepare the entire width of the road for the public use.

There was a considerable descent from the top of the knoll to the tracks, but it was not intended for driving; such uneven places are to be found upon every country road.

It is quite common for the public authorities to prepare a track for driving in dry weather, and a parallel one at a considerable elevation to be used in the rainy seasons, and it could hardly be claimed that if the plaintiff had been attempting to pass from one of such tracks to the other and had been upset, the town would be held liable for damages.

The plaintiff also claims that the northerly track leading from East street into Mill street had been encroached upon by a fence post, and that thereby the turn had been made more difficult.

If so, it did not justify him in driving over a place where he was almost certain to upset his load.

There was evidence showing that Mr. Robbins, the owner of the land adjoining the two streets, had, by permission of the highway commissioner, put the corner of his fence out into the old beaten track around the corner.

Mill street had been used for many years, but had never been surveyed and a record made of its location until a short time prior to the accident.

The highway commissioner had caused a survey of it to be made, and located the northeast corner of the two streets mentioned, and consented to the building of the fence mentioned, which, as stated, did encroach to some extent upon the old traveled road.

We do not deem it necessary to discuss the question of the right of the highway commissioner to give permission to Robbins to build the fence; the plaintiff knew of the alteration of the fence; he knew that it somewhat narrowed the highway as it had been theretofore used, and concluded to make the hazardous experiment of driving over the knoll, with the result stated.

We think he failed to show himself free from negligence contributing to his injuries, and that the trial court made the proper disposition of the case.

The motion for a new trial should be denied and judgment ordered for the defendant upon the nonsuit.

DWIGHT, P. J., and HAIGHT, J., concurred.

Plaintiff's motion for new trial denied, with costs, and judgment ordered for the defendant upon the nonsuit.