EDWARD F. BYRNE, Respondent, *v.* THE CITY OF SYRACUSE, Appellant.

*Commissioner of public works of Syracuse — duty as to removing obstructions from the streets — when the city is chargeable with notice of the obstruction — map of the place of an accident — when properly received in evidence.*

The law imposes upon the commissioner of public works of the city of Syracuse the duty of inspecting from time to time the streets of such city and of seeing that the same are kept free from obstruction and in good condition and repair.

The fact that an obstruction upon the street of a city was placed there by a surface railroad company, which had a franchise to operate its road along such street, does not exonerate such city from liability in an action brought to recover damages for personal injuries sustained by reason of such obstruction, if the obstruction had been on such street a sufficient length of time to arrest the attention of the proper city officials; it is the duty of such city either to require such railroad company to restore the street to a reasonably safe condition or to make such restoration itself.

Upon the trial of an action brought to recover damages for personal injuries, alleged to have been sustained by reason of the negligence of a city in leaving an obstruction upon one of its streets, it appeared that such street had been left at the place of the accident in substantially the same condition for nearly eight months.

*Held*, that the city had had ample time to make repairs to the same and was chargeable with notice of the defective condition of such street.

In such action a map of the premises in the immediate vicinity of the place of accident, made by a surveyor, was produced upon the trial, evidence was given as to the surrounding facts and circumstances in connection with the same, showing the situation of the street with a cross section thereof, and testimony

was allowed, over the defendant's objection, as to the condition of the street for a rod or twenty feet either way; the witness also testified: " This cross section that I give here, 377 feet, is the point that was pointed out to me by Mr. Byrne (the plaintiff) as the place of the accident. This is about 22 feet south of the tree, that oak tree, and about 23 or 24 feet south of the telegraph pole. This point where I made my measurements was about 50 or 60 feet north of house number 1312, the first house south on the west side of the street. For 20 feet either way it is very much the same as that cross section shown. I observed this particularly."

Thereupon the map was offered and received in evidence over the defendant's objection, " That it is a profile not of the point of the accident as stated by the plaintiff."

*Held*, that under the evidence relating to the measurements made by the engineer and upon his testimony as to the circumstances under which the map was made, which had noted upon it the measurements which he had testified to, the trial judge committed no error in allowing the map to be received and used in connection with that testimony.

APPEAL by the defendant, The City of Syracuse, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Onondaga on the 14th day of November, 1893, upon the verdict of a jury rendered after a trial at the Onondaga Circuit, and also from an order entered in said clerk's office on the 12th day of December, 1893, denying the defendant's motion for a new trial made upon the minutes.

*Charles E. Ide*, for the appellant.

*Cook, Knottingham & Pierce*, for the respondent.

HARDIN, P. J. :

In June, 1890, the common council of the city of Syracuse granted a franchise to the Syracuse and Onondaga Railroad Company to build a double track road over the center of Salina street, from the swing bridge south to Brighton Corners. The tracks were laid under a grade fixed by the city engineer, and at a point near where the accident occurred the grade was raised some two feet above the original roadbed. The center of the street was filled in by the railroad company and its tracks were then laid upon the filling, which extended some two feet outside of the center rails. The work was commenced in the beginning of October, 1891. An embankment or elevation was formed in the center of the street with the driveways below on either side. The descent from the west rail was abrupt,

being nearly two feet in a distance of four feet. ' On the evening of the 21st of June, 1892, the plaintiff, with a friend, drove along South Salina street towards Brighton on the west side, and when about returning to his home in the fifth ward of the city, he was driving on the east side of South Salina street, and when he reached a point near No. 1312 of South Salina street, between Colvin street and Beard avenue, he found the road rough and made an attempt to cross from the east side of the tracks, and while doing so, and as the wagon was going down the embankment on the westerly slope, it was overturned and broken and the plaintiff thrown to the ground, sustaining quite extensive injuries to his shoulders and spine. At the time of the accident it was dark and rainy — a cloudy night. Plaintiff had not been on the street prior to the night of the occasion of the accident after the double tracks had been laid. The charter of the defendant confers upon its officers the powers of commissioners of highways in towns, with authority to make, regulate and repair the highways and streets within its corporate limits. (Chap. 475 of the Laws of 1889.) And the law casts a duty upon the commissioner of public works to inspect from time to time the streets of the city and see that the same are kept free from obstruction and in good condition and repair. Considerable evidence was given upon the trial in relation to the obstruction, the unevenness and rough condition in which the street was left at the point where the accident occurred. Upon the evidence given upon the trial we think it was a question of fact for the jury to determine whether the defendant had been guilty of negligence in leaving the street in the condition in which it was at the time of the accident, and that it would have been error for the court to have granted the defendant's motion for a nonsuit, and held as matter of law that the defendant was not guilty of negligence in leaving the street in the condition in which it was found on the occasion of the accident. The fact that the obstruction was placed there by the railroad company does not exonerate the defendant; it had been there a sufficient length of time to arrest the attention of the defendant, and it was its duty either to require the railroad company to restore the street to a reasonably safe condition or to make such restoration itself. (*Sherman* v. *The Village of Oneonta*, 49 N. Y. St. Repr. 271; S. C. affd. by the Court of Appeals April 10, 1894; *Horey* v. *The Village*

*of Haverstraw*, 47 Hun, 356 ; *Pettengill* v. *The City of Yonkers*, 116 N. Y. 558.) It appears by the evidence that the road had been left at the point of the accident in substantially the same condition for nearly eight months, and, therefore, the defendant had ample time to make the repair and was chargeable with notice of its defective condition. (*Pettengill* v. *City of Yonkers*, 116 N. Y. 558.)

(2) After a description of the situation of the street as it was found the next morning after the accident, and after presenting the facts and circumstances disclosed by the testimony of the surveyor who made a map of the premises in the immediate vicinity of where the accident occurred, the plaintiff testified to the circumstances attending his efforts to cross the tracks and reach the other side of the street, giving his recollection of all the incidents that occurred on the occasion when he was overturned. From such evidence it was a question of fact for a jury to determine whether the plaintiff used reasonable care and caution, or whether he was guilty of contributory negligence ; and we think the trial judge committed no error in refusing to hold that he was guilty of contributory negligence as a matter of law and in submitting the question of fact in that regard to the jury. (*Atwater* v. *Veteran*, 26 N. Y. St. Repr. 945 ; *Campbell* v. *The N. Y. C. R. R. Co.*, 19 id. 659.)

The case of *Cleveland* v. *Town of Pittsford* (72 Hun, 552) differs from the one before us. In that case the plaintiff was familiar with the surroundings ; " he knew the uneven condition of the highway, and was aware of the ease with which his top-heavy load might be upset, and should have known that an attempt to drive over the place he did must almost inevitably result in overturning his load. He could as well have driven into a ditch upon the side of the road and expect his load to remain intact."

In *Pettengill* v. *The City of Yonkers* (*supra*) it was said that a person using a public street " is not required to be vigilant to discover dangerous obstructions, but he may walk or drive in the daytime or night-time relying upon the assumption that the corporation whose duty it is to keep the streets in a safe condition for travel have performed that duty and that he is exposed to no danger from its neglect."

Appellant calls our attention to *Cummins* v. *The City of Syracuse* (100 N. Y. 637). The facts of that case are quite unlike those

found in the case at bar. In that case the plaintiff knew of his proximity to a bridge and he disregarded the warning that was given to him and neglected to employ the light and guide which were ready at his hand, and the court laid stress upon those circumstances in reaching the conclusion that he was guilty of contributory negligence.

Appellant calls our attention to *Durkin* v. *The City of Troy* (61 Barb. 437). The facts of that case are quite unlike those here. There there was danger in walking over a piece of ice which the plaintiff voluntarily and unnecessarily undertook to walk over when he could plainly see and easily avoid it, and he had been warned of it. We think the case does not aid the contention of the appellant.

(3) It appeared by the evidence that a map was made by Surveyor Mather of the road at a point between Beard avenue and Colvin street. The witness produced it upon the trial and gave evidence as to the surrounding facts and circumstances in connection with the map which he had presented, showing the situation of the street with a cross section thereof, and, after stating the condition in which he found the street, he was allowed to state, against the defendant's objection, " the condition of the street for say a rod either way, twenty feet either way," and then he added : " This cross section that I give here, 377 feet, is the point that was pointed out to me by Mr. Byrne as the place of the accident. This is about 22 feet south of the tree, that oak tree, and about 23 or 24 feet south of the telegraph pole ; " adding : " This point where I made my measurements was about 50 or 60 feet north of house number 1312, the first house south on the west side of the street ; " and he stated : " For 20 feet either way it is very much the same as that cross section shown. I observed this particularly." Thereupon the map was offered in evidence, which was objected to, " That it is a profile not of the point of the accident as stated by the plaintiff." The objection was overruled and the defendant took an exception. We think, upon the evidence relating to the measurements made by the engineer, and upon the evidence disclosed by him as to the circumstances under which the map was made, which had noted upon it the measurements which he had testified to, as well as the measurements given by him in giving his testimony as to the cross section,

which had also been mentioned by him in his testimony, that the trial judge committed no error in allowing the map to be received and used in connection with his testimony. No other grounds of error are alleged by the appellant, and we find, upon reading the charge, that the case was very carefully presented to the jury by the trial judge in a charge to which no exceptions were taken, and we are of the opinion that the verdict should stand.

MARTIN and MERWIN, JJ., concurred.

Judgment and order affirmed, with costs.